## City of Philadelphia, to use of O'Rourke, *versus* Philadelphia and Reading Railroad Co.

A city ordinance of December 30th 1873, authorized the department of highways, to contract with a competent person who should be selected by a majority of the owners of property fronting on Lehigh Avenue, to pave said avenue between certain points, the cost to be collected by the contractor from the owners of the property fronting on said avenue. On October 2d 1873, previous to the passage of this ordinance, a majority of the owners on said avenue signed a paper selecting plaintiff as paver. Subsequently, on January 7th 1874, a number of those who had signed this paper, formally withdrew their assent thereto, and gave notice to the highway department. That department, notwithstanding, awarded the contract to plaintiff, who proceeded with, and finished the work, and who issued a scire facias to recover the portion of the cost due by defendants, *Held,* that it was compe-

[City of Philadelphia *v.* Phila. & Reading Railroad Co.]

tent for the property owners who had signed the paper selecting plaintiff to do the work, to revoke that selection, and that their revocation, and notice to the highway department, were a bar to plaintiff's recovery. *Held, further,* that the highway department had no authority to enter into a contract with any one who was not selected by a majority of owners.

January 10th 1879. Before SHARSWOOD, C. J., MERCUR, GOR-DON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county:* Of July Term 1877, No. 127.

Scire facias sur municipal claim by the city of Philadelphia, to the use of Michael O'Rourke, against the Philadelphia and Reading Railroad Company.

The facts and proceedings in the court below are sufficiently stated in the opinion of Thayer, P. J.

The verdict was for the plaintiff for $978.20, subject to the opinion of the court on certain points reserved.

The court subsequently entered judgment for the defendants, *non obstante veredicto,* on the first point reserved, and filed the following opinion :

" This was a scire facias on a claim for paving in front of defendant's property. The facts in evidence were as follows : A city ordinance, passed December 30th 1873, authorized the department of highways ' to enter into a contract with a competent paver, who shall be selected by a majority of owners of property fronting on Lehigh avenue, between Richmond street and Frankford road, for the paving of market plots on the said street, between the points named. The conditions of which contract shall be, that the contractor shall collect the cost of said paving from the owners of property respectively fronting on said street: Provided, that the contractor indemnify the city against the payment of any part of the cost of paving said market plots.'

" The whole number of owners of property upon Lehigh avenue, between the points named in the ordinance, was ninety-seven, and the plaintiff, O'Rourke, had obtained forty-nine of these, who signed a paper dated October 22d 1873, selecting him as paver.

" An ordinance passed December 31st 1862, provides that before any contract for paving shall be entered into by the highway department, ' the person applying for such contract shall give notice of such application in two daily papers, setting forth : 1. The name of the contractor. 2. The locality of the spaces intended to be paved. 3. The name and residence of each person signing for the contractor. 4. To such notice shall be added an invitation to the owners of property on such street to meet at the department of highways, at a certain hour, on a given day, to show cause, if any, why such contract should not be awarded to the applicant.'

" The plaintiff gave notice in two daily papers that he would make application to the department of highways on the 14th of January

1874, at 12 o'clock, for a contract for this paving, at which time all persons interested were required. to attend, to show cause why the contract should not be awarded to him. This notice omitted to state the residences of the property owners who had signed for the plaintiff. In the meantime, viz., on January 7th 1874, seventeen of the forty-nine persons who had signed the paper of October 22d 1873, selecting the plaintiff as paver, signed another paper, formally revoking their selection of the plaintiff, and declaring that they do not consent that the contract shall be awarded to the plaintiff, and therefore that he is not the choice of the majority of the owners of property. In this paper they further authorize counsel to appear on their behalf before the department of highways, to oppose the awarding of the contract to the plaintiff. Accordingly, at the time indicated in the plaintiff's published notice, viz., on January 14th 1874, the plaintiff appeared at the department of highways with the original paper of October 22d 1873, and at the same time counsel appeared for the seventeen property owners who had retracted their consent, presented the paper containing their formal retraction, and opposed the awarding of the contract to the plaintiff. Notwithstanding this, the contract was awarded to the plaintiff on January 16th 1874. Before he had entered upon the work, however, the present defendants, by their counsel, served upon him a written notice that the defendants denied. the authority of the highway department to award the contract to him, that they would contest his authority, and refuse to pay any part of the cost. Nevertheless, the plaintiff went on with the work.

" On the trial, the court directed a verdict for the plaintiff, reserving the following points of law : Whether it was competent for the property owners. who signed the paper of October 22d 1873, selecting the plaintiff to do the work, to revoke that selection, and if so, whether their revocation of the same by the paper of January 7th 1874, and their notices to that effect to the highway department and the plaintiff, are a bar to the plaintiff's recovery ? Whether the omission of the residences of the signers of the paper of October 22d 1873, from the public notice given by the plaintiff, is fatal to his recovery ?

" It seems quite clear that under the ordinance of December 30th 1873, the department of highways had no authority to enter into a contract with any person who was not selected by a majority of owners. The authority given by the ordinance is expressly so restricted, and the department could not lawfully exceed the authority delegated to them by the councils. The written consent of the property owners contained in the paper of October 22d 1873, would seem to have been the inducement for the passage of the ordinance of December 30th 1873. Indeed, it is stated in the body of the paper, that it is signed ' to procure the passage of a resolution by the city authorizing the work to be done.' There is no reason to

[City of Philadelphia *v.* Phila. & Reading Railroad Co.]

suppose that the ordinance would have been passed except for that paper. It is necessary for the security of the city that its heads of departments and agents be strictly confined within the letter of authority under which they act.

"In Reilly *v.* The City, 10 P. F. Smith 467, it was decided that under a similar ordinance, the claimant could not recover unless he first proved that he had been selected by a majority of the owners. 'It is clear,' says WILLIAMS, J., in that case, 'that under the provisions of the ordinance the equitable plaintiff had no authority to pave the street unless a majority of the lot owners selected him, and the department of highways contracted with him to do the work. His selection by a majority of lot owners, and his engagement by the department of highways, are essential requisites, in order to give him authority to do the work and the right to collect the cost from the owners. Under the provisions of the ordinance, a contract with the department of highways would give no authority to pave the street and to collect the cost from the lot owners, unless he was selected by them to do the work. The department had no authority to enter into a contract with him, unless he was selected by a majority of the lot owners.' In The City *v.* Stewart, 1 W. N. C. 242, the Supreme Court reaffirmed the ruling in Reilly *v.* The City, and the point must now be regarded as settled.

"Was it competent, then, for the property owners who signed the paper of October 22d 1873, to revoke their selection? This question cannot now be considered an open one, for it was expressly ruled by the Supreme Court in Dickerson *v.* Peters, 21 P. F. Smith 53, where it was decided that the proceeding is *in fieri* until the contract is awarded, and until that time the selection by the majority is revocable. 'Why,' says SHARSWOOD, J., in that case, 'should the owners be absolutely bound by their first nomination? It is evident that the whole proceeding was *in fieri* until the contract was actually awarded. It is clear that they could not award the contract to any person not selected. The nomination was essentially a revocable act, while the proceeding was *in fieri*, and before the contract was actually awarded. The owners ought not to be bound by a hasty or unwise selection, nor to be required to assign a sufficient cause for revoking it, if they see fit to do so.'

"The revocation before the contract was awarded, by the seventeen property owners out of the forty-nine who had originally signed for the plaintiff, was therefore the exercise of a power which the highest authority has decided justly and lawfully belonged to them. It left the plaintiff in a large minority, for, after the revocation, he had only twenty-two names out of the ninety-seven. Notwithstanding this, in the face of full notice, and against the written protest of those who had revoked their selection, the highway department awarded the contract to the plaintiff. In so doing they acted contrary to law. By such unlawful proceeding the plaintiff could acquire no right of

action against the defendant or the other property owners; nor has he now any just cause to complain.   He was a mere volunteer.   He had written notice before he commenced the work that the action of the department was unlawful, and that the defendant would not be bound by it.   He chose to take the risk of proceeding, and must abide the result.   *Volenti non fit injuria.*   If a person says, ' there are spring-guns in the wood,' and another then takes it upon himself to go into the wood, knowing that he is in hazard of meeting with the injury which the guns are calculated to produce, he does so at his own peril, and must take the consequences of his own act. 1 Saund. 848, n. d.; Ilott *v.* Wilks, 3 B. & Ald. 311.

" The determination of the first point reserved being adverse to the plaintiff, and going to the root of the whole case, it is unnecessary to consume time on the consideration of the other point.

" Rule for a new trial discharged, and judgment for the defendant on the first point reserved *non obstante veredicto.*"

This action of the court was assigned for error by the plaintiff who took this writ.

*David W. Sellers*, for plaintiff in error.—The selection of O'Rourke was coupled with an interest, and without cause it was irrevocable for all the purposes for which, as a contract, it was made. Why should the highway department be disabled from awarding a contract which the owners had expressly agreed should be secured to O'Rourke.   Where the action of damages is cumbrous, and will not provide a safe and adequate remedy, enforcement will be adjudged : McGowin *v.* Remington, 2 Jones 56 ; Evans's Appeal, 27 P. F. Smith 227.

What sort of action would O'Rourke have here ?   Would it be several or joint ?   Would the measure of damages be the loss of profits or expenditure incurred ?   Surely the object of the contract with the owners was to secure the contract for the paving.   Why was not this unimpairable, and why have the owners any legal right of complaint, if, in accordance with their agreement, O'Rourke " secured the contract for the paving ?"

*Thomas Hart, Jr.*, for defendant in error.—If Michael O'Rourke was not " selected by a majority of the owners of property fronting on Lehigh avenue," the contract made with him by the highway department was not valid, and he cannot recover.   The department had no authority under the ordinance of December 30th 1873, to make a contract with any other person than one so selected.

The case of Reilly *v.* City of Philadelphia, 10 P. F. Smith 467, settled the law that in a suit of this kind, under a like ordinance, the plaintiff must prove affirmatively upon the trial that he was selected by a majority of the property owners.   This case was afterwards, notwithstanding the effort of the same learned counsel

appearing for the plaintiff here, to have the same reviewed, affirmed, and the same principle applied.    See City, to use, *v.* Stewart, 1 W. N. C. 242.    There can be no question of the application of Reilly *v.* City, to this case.

The judgment of the Supreme Court was entered, January 27th 1879,

PER CURIAM.—Nothing we think can be added to the opinion of Judge Thayer, upon the point reserved in the court below and upon that opinion.

Judgment affirmed.