## The City of Harrisburg, Appellant, *v.* S. J. Shepler.

*Municipal law—Divisible contract—Controller's certificate—Performance and acceptance.*

Where the consideration of a municipal contract is divisible, the cost of one part of the work being chargeable to one item of appropriation, and the cost of the other part being chargeable to another item, and the work has been performed in accordance with the terms of the contract, and has been accepted by the city, the controller's failure to charge the estimated expenditure for the former part of the work to the proper appropriation and to certify the fact upon the contract, does not prevent its taking effect in other particulars when as to the other part of the expenditure thereunder the controller did his duty.

*Municipal contract—Controller's certificate after work done—Affirmance of contract—Equities of property owner.*

Where a sufficient appropriation has been made to meet the expenditure of a proposed contract, and no act necessary to give the contract full effect remained unperformed except the bare indorsement of the controller's certificate, while performance of this statutory duty cannot be waived by the city officers yet if the certificate be placed on the contract after the completion of the work where he had full authority to certify it before work began and the city ratifies it, the city is bound as between the city and the contractor, and the rights of the property owner rise no higher than the city's.

A municipal contract for paving providing for payment partly in cash for city property and by assessments against property of abutting owners, is one "involving the appropriation of money" under the Act of May 23, 1889, P. L. 277, and the validity of the contract is dependent upon the performance of required functions imposed on the contractor in the matter certifying the item of appropriation on which it is founded. A certificate failing to indicate the cash appropriation and indicating only the total as-. sessments is defective.

*Public officers—Engineer's duties in assessing cost—Confirmation by city when not required.*

Where in a municipal contract for paving, the ordinance directs the city engineer to assess the cost of paving without directing him to report his schedule to the councils for approval, such duty so delegated to the engineer being purely a ministerial one, a simple mathematical calculation, with which the principal finds no fault, and in which none is alleged, the contract will not be declared invalid on the technical objection that the city has not affirmatively approved the engineer's figures in his divisions and additions.

Argued March 10, 1898.   Appeal, No. 47, March T., 1898, by plaintiff, from judgment of C. P. Dauphin County, Jan. T., 1898, No. 67, in favor of defendants on case stated.   Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.   Reversed.

Case stated.   Before McPHERSON, J.

The facts sufficiently appear from the following case stated:

And now, October 1, 1897, the following facts are agreed upon in the nature of a special verdict, for the opinion of the court thereon:

1. On August 13, 1890, the mayor of the city of Harrisburg duly approved ordinance No. 317, file of the select counsel, authorizing the paving of Fourth and Sixth streets in said city, a copy of which is hereto attached as part hereof.   Under this ordinance the paving hereinafter mentioned was done.

2. Prior to the introduction and passage of said ordinance a petition signed by S. J. Shepler had been presented to the councils.

3. On March 15, 1890, the mayor approved an ordinance of the city of Harrisburg which had been regularly passed, being ordinance No. 299, file of select council, and entitled an ordinance to provide for the paving of Fourth and Sixth streets, etc., from the southern line of Chestnut street to the southern line of Maclay street.

4. That prior to the paving upon which this case stated arises Third street, Market street, Walnut street and part of Strawberry avenue had been paved and had been paid for or the payment thereof provided by local assessments upon the property abutting on the street paved, and an assessment proportionately equal to the assessment laid upon private property was laid

upon engine house property on Third street and market house property on Market street owned by the city fronting upon said paved streets and the amount of such assessment upon the city property was paid by the city out of appropriations regularly made therefor in the annual appropriation ordinance.

5. On April 5, 1890, the mayor of said city duly approved ordinance No. 1,159, file of common council, wherein is contained this item of appropriation: "For the paving of Fourth and Sixth streets in front of city property, $1,500."

6. That a contract for said paving was entered into between said city and the Barber Asphalt Paving Company, dated August 25, 1890.

7. That the city controller's certificate on said contract was placed there on May 3, 1897, and the controller had never certified said contract prior to said time.

8. That the said paving was done in the summer and fall of the year 1892, and was duly accepted by said city.

9. That the assessments for the cost of said paving were made by the city engineer of the city on the　　day of July, 1892, by an equal assesment upon the foot front of the property abutting on said street, and property of the said city of Harrisburg, consisting of vacant lots and some improved property, used as engine houses, fronting on said street, was assessed at the same rate as private property, the aggregate assessments of such city property amounting to $1,250.40. That the assessments so made were certified to the city treasurer, but were never certified by the said councils, nor were the same acted upon by the said councils.

10. That payment for said pavement has been made to the contractor by the city of Harrisburg, partly in cash and partly in improvement bonds issued and delivered by the city, the cash payment being made up of assessments paid by property holders and of the sum of $1,250.40 paid by the said city in pursuance of the assessment aforesaid, and was paid from the item of appropriation referred to in paragraph three.

11. That on March 8, 1893, a lien was filed against the defendant's property to No. 43, city lien docket, No. 4, which is hereby made part hereof.

12. That said assessments were made payable in ten annual instalments and defendant paid to the city the first four instal-

494 HARRISBURG v. SHEPLER.

Statement of Facts—Opinion of Court below. [7 Pa. Superior Ct.

ments thereof as they became due. At that time defendant had no knowledge of the several facts which he now, by his counsel, alleges as a defense hereto.

If the court be of the opinion that the plaintiff is entitled to recover the unpaid balance of said assessment, then judgment to be entered for the plaintiff for $92.67; otherwise judgment to be entered for the defendant and the said lien to be stricken off, the costs to follow the judgment.

Each party reserving the right to appeal without oath or bail to the Superior and Supreme Courts.

The court below entered judgment in favor of defendants on the case stated in the following opinion by McPHERSON, J.:

This case stated presents the question whether the defendant's property, which abuts upon Sixth street in the city of Harrisburg, is bound by an assessment levied to pay for covering the street with asphalt. In many of its facts the controversy is identical with the dispute in Harrisburg City v. Trego, decided by this court last July; but in one respect it differs so materially as to compel a different conclusion. In Harrisburg v. Trego it did not appear that any appropriation of the city's money had been ordained by councils, or that any appropriation was involved in the contract. The decision is rested upon that point, as may be seen by examining the opinion, to which we refer with the same effect as if it were set out here in full. It is now admitted, however, that several months before the ordinance was passed under which the contract was made and the work was done, an ordinance had been passed appropriating $1,500 of the city's money " for the paving of Fourth and Sixth streets in front of city property;" and it is also admitted that the cost of paving was assessed by the city engineer upon all the property abutting on the street including the property of the city, the share of the city amounting to $1,250.40; and that this sum was paid by the municipality in pursuance of the assessment out of the item of $1,500 just referred to. In view of these facts it seems impossible to avoid the conclusion that the contract in question involved an appropriation of the city's money.

It is possible that a better word than "involving" might have been used by the legislature in article IX., section 5 of

the cities' act of 1889, P. L. 303; but if other provisions of the statute concerning appropriations are considered, a " contract involving an appropriation " seems at least to mean a " contract requiring for its · execution an appropriation of the city's money." Sections 9 and 10 of article VI. prescribe the time and form of making appropriations. The fiscal year of the city is to begin on the first Monday of April. Before that date each department is required to present to councils an estimate of probable receipts and expenditures, and of the amount required for the public service during the ensuing year. Thereupon councils are to make the annual appropriation to each department, and after all the appropriations for the expenditures of the ensuing year have been finally made, the tax rate is to be fixed at such figure as with all sorts of revenue shall fully meet and cover the aggregate amount of such appropriations. No appropriation is to be made for any purpose in excess of the estimated receipts for the fiscal year. It is thus apparent that each department is credited at the beginning of the year with a certain sum, which has been set apart for its disposal and has been appropriated in more or less detail for the public service. Such parts of this sum as may have been specifically devoted to particular purposes by the general appropriation ordinance are no doubt sufficiently appropriated without another ordinance, but such parts as are merely appropriated in general terms for the uses of the department during the ensuing year cannot be spent at the department's pleasure ; they cannot be expended upon a specific object until another ordinance is passed giving the municipal consent thereto. Whether these specific appropriations should be made before or after the contracts that call for the spending of the money, is not now of importance ; at present, it need only be pointed out that a contract which cannot be carried into effect unless an ordinance is passed appropriating a part of the city's money is certainly a contract "involving" the appropriation of money. A contract of itself does not and cannot appropriate. This must be done by a legislative act of the municipality ; but a contract may purport to bind the city to spend the public money, or it may require an appropriation of public money before it can be carried into effect, and in either event it cannot take effect as a valid contract unless the fifth section of article IX. is obeyed.

Upon the facts agreed on, it does not seem necessary to prolong the discussion. There is here, first, an ordinance passed in March, 1890, providing for paving the street in question, followed in April by a specific appropriation of $1,500 to pay the city's share of the cost. For some reason not now before us, no action is taken under the ordinance of March, but the appropriation remains in full force. A few months later, a second ordinance is passed, under which the work is done. This requires an assessment to be made upon all the property fronting upon the street, and is followed by a contract in accordance with which the paving is completed. An assessment is duly made, which is levied upon the property belonging to the city as well as the property belonging to individuals. Whether or not municipal property is liable to assessment for the cost of a public improvement, if the municipality refuses its consent to the levy, is a somewhat vexed question into which we need not enter. Even if a city is not bound to submit to an assessment upon its property, no reason is apparent why it may not promise to pay a fair proportion of the cost of paving; nor, if such an agreement is made, why it may not lawfully use the public money to discharge its obligation, even if the obligation is only moral and not enforceable at law. In the case before us, the city promises to pay the contractor a specific price "out of the assessments made and levied for the purpose;" and a part of these assessments was levied upon its own property and paid out of a fund appropriated for this precise purpose. This, with the other facts referred to above, seems to bring the dispute within the ruling of Erie City v. Moody, 176 Pa. 478, a ruling recognized a few months ago in Phila. v. Gorgas, 180 Pa. 307. In obedience to that decision we hold that the contract now in controversy did not take effect so as to bind the defendant's property, because the contract did not designate the item of appropriation on which it was founded, neither did the controller certify upon the contract that the estimated amount of the expenditure thereunder had been charged against the item appropriated for its payment.

It need not be decided whether the controller's certificate was placed upon the contract in time to be effective, because the certificate itself is incorrect. It declares that the estimated amount of expenditure under the contract is $47,709.47 (this

being the aggregate of the assessments upon all the abutting property); and that the said amount of estimated expenditure has been charged against the total amount of assessments, this amount having been appropriated to pay for the work. This is not the certificate required by the statute. So far as the city is concerned, the only item of appropriation on which the contract is founded is the item of $1,500; and against this item the estimated amount of expenditure of the city's money should have been charged. For reasons given in Harrisburg v. Trego, we are of opinion that money to be collected by the city from individual owners of abutting property, in order to be handed over by the treasurer to the contractor, is not money appropriated by the city, because it is not money belonging to the city, but is simply cash in its treasurer's custody. It may also admit of discussion, whether the item of appropriation on which the contract is founded is designated in the manner required by section 5 of article IX. The controller's certificate upon the contract is an evident attempt to comply with this requirement—and it may be that a designation of the item in his certificate is a sufficient compliance with the statute—but certainly it would at least avoid dispute if the designation should be found within the body of the contract. The point, however, is left undecided.

It was argued for the plaintiff, although not with much urgency, that the defendant is estopped from contesting the assessment because he petitioned councils to do the work. It is true that he signed such a petition, and no doubt his signature would estop him from denying that the work ought to have been done, or from making certain other defenses; but it seems to us equally incontestable that his signature does not estop him from insisting that the work must be done in the manner provided by law. He had no power over the process of passing the ordinance or of executing the contract. This was entirely within the hands of councils. The statute describes the prerequisites of an instrument that shall take effect as a binding obligation, and he had a legal right to suppose that these would be observed. That he is not estopped by his signature from attacking the contract upon the ground that it was not entered into as the law requires, has been decided in several other states (Sharp's Petition, 56 N. Y. 257; McLauren

v. Grand Forks, 27 Am. & Eng. Corp. Cas. 161; Tone's Exec'rs v. Columbus, 3 Am. & Eng. Corp. Cas. 644; Steckert v. East Saginaw, 22 Mich. 104); and quite recently in Pennsylvania in Bradford v. Fox, 171 Pa. 343. Neither is he estopped by the payment of several instalments of the assessment, for the case stated expressly admits that these payments were made before he had any knowledge of the facts he now alleges as a defense to the payment of the rest.

It must be confessed that the defendant's freedom from liability is a result reached with some reluctance. He asked for this improvement and is now enjoying its advantages, but when payment is demanded according to his clearly implied promise he refuses to fulfil his engagement because a legal requirement has been violated, although the violation has done him no actual harm. Those who opposed the improvement are fully justified in defending upon any ground the law has provided for their protection; but on the part of a petitioner for the paving, this shifting of obligation lacks fairness. But the general language of the law permits it to succeed. It is undoubtedly an available legal defense that a positive command of the statute has been disobeyed; and the defense having been made, the court has no choice except to sustain it, even though a petitioner is thereby enabled to avoid his engagement.

In accordance with the terms of the submission, the prothonotary is directed to enter judgment for the defendant, and to strike off the lien.

Judgment for defendant.  Plaintiff appealed.

*Error assigned* was entering judgment for defendant on case stated.

*C. H. Bergner*, with him *D. S. Seitz*, city solicitor, for appellant.—The controller's certificate is not necessary on a contract for paving in which it is provided that the entire cost of such paving is to be paid by local assessments upon abutting property.

The provisions of the act of May 23, 1889, under which reliance is had by defendants, refer exclusively to appropriations of money and the purport is that such appropriations must first be made so that the tax rate can be fixed sufficiently high to cover fully the aggregate amount.

An appropriation by a city must be the setting aside of a definite, certain, and named amount of actual cash to be paid from the funds of the public treasury for a specified object.

In any event the controller can effectively place a certificate upon a contract for paving, the cost of which is to be paid entirely by local assessments, after the work has been com pleted and accepted by the city: Phila. v. Railroad Co., 88 Pa. 315 ; Phila. v. Hays, 93 Pa. 72 ; Shiloh Street, 165 Pa. 386 ; Chester v. Eyre, 181 Pa. 642.

A controller has power to certify the contract in order to do justice (Murray v. Cooper, 6 S. & R. 126), and such entry may be made nunc pro tunc. It may be made on trial. The court might order it to be made : Logansport v. Crockett, 64 Ind. 319 ; Com. of Lowndes v. Hearn, 59 Ala. 371 ; Mayhew v. Gay Head District, 95 Mass. 129.

*Wm. H. Middleton,* for appellee.—The contract was void, because it was not certified by the city controller as required by the Act of 1889, art. IX. sec. 5, P. L. 303.

It seems to be the intent of the law that councils must first provide a fund to pay for the work, and make an appropriation of the necessary amount, before a contract therefor is valid and effective : Erie v. Moody, 176 Pa. 478.

The appropriation was a part of the contract, as much so as if written therein : Erie v. Griswold, 5 Pa. Superior Ct. 132.

The certificate of the controller was necessary as to the entire contract price of the work. Even if the controller's certificate had been a proper one the placing of it on the contract five years after the work was done could not validate it : 1 Dillon Mun. Corp. (4th ed.) sec. 463, and note to sec. 465, where Peterson v. Mayor, 17 N. Y. 449, is cited with approval : Newman v. City, 7 A. & E. Corp. Cases, 261, 270.

A city can create a valid municipal lien only when the improvement is made in pursuance of law, and the mode prescribed by statute is strictly followed : R. R. Co. v. Allegheny, 92 Pa. 100 ; Hershberger v. Pittsburg, 115 Pa. 78 ; Ferguson's App., 159 Pa. 39.

There was no valid levy of the special tax in this case, because the assessments were made by the city engineer and never reported to councils for their approval or confirmation.

· OPINION BY RICE, P. J., July 29, 1898:

This case involves the construction of the 5th section of article 9 of the Act of May 23, 1889, P. L. 277, 303, and its application to assessments for paving done under contract. The section reads as follows:

"Every contract involving an appropriation of money shall designate the item of appropriation on which it is founded, and the estimated amount of expenditure thereunder shall be charged against such item and so certified by the controller on the contract before it shall take effect as a contract, and the payments required by such contract shall be made from the fund appropriated therefor. If the controller shall certify any contract in excess of the appropriation made therefor, the city shall not be liable for such excess, but the controller and his sureties shall be liable for the same, which may be recovered in an action at law by the contracting party aggrieved. It shall be the duty of the controller to certify contracts for the payment of which sufficient appropriations have been made."

In order to have a correct understanding of the case it will be well to quote the pertinent provisions of the ordinance and contract under which the pavement was laid.

Section 6 of the ordinance reads as follows: "At the expiration of thirty days after the commencement of the work, the city treasurer shall certify to the city solicitor the names of all the owners, if known, together with a full description of all the properties against which assessments have been made under this ordinance and remain unpaid in whole or in part, and the city solicitor shall enter liens for the said unpaid assessments, and shall, from time to time, proceed to collect such assessments or parts thereof as are due and unpaid, according to law, with all accrued interest, cost and penalties imposed by law. The total amount of said assessments, or so much thereof as may be necessary, is hereby appropriated for the payment of the contract price of the work and other necessary expenses." Section 3 of the ordinance directed that in advertising for bids the city engineer should give notice by the specifications "that the contractor or contractors shall be paid the cost of paving said streets, by moneys to be collected by the city treasurer from the property owners whose land fronts or abuts on said street between the points above mentioned,

and that the city of Harrisburg shall, under no circumstances, be held responsible for the payment of any part of the cost of said improvement except as to assessments upon non-assessable property, which assessments are hereby guaranteed by the city of Harrisburg, and except as to amounts actually received from such owners by the city treasurer for the contractor or contractors."

Prior to the adoption of this ordinance the city councils had appropriated the sum of $1,500 for paving the street "in front of city property."

After stipulating that the city should pay "out of the assessments made and levied for the purpose," a certain price for every lineal foot frontage of pavement, etc., the contract proceeds as follows: "It is understood that the payments as aforesaid shall be made as follows: First, out of the amount of the assessments paid into the city treasury, and when the fund is exhausted, then the city of Harrisburg will issue to the said contractor improvement bonds in the usual and proper form, with coupons attached, for the amount of assessments outstanding and amounts due the said contractor, which bonds shall rest alone upon and be payable out of said assessments and from no other fund. . . . It is also understood that the said contractor shall accept the bonds and payments just described in full payment of the amount due the said contractor under this contract, and the city of Harrisburg shall not be otherwise liable under this contract whether said assessments are collectible or not."

The work was completed in 1892, and in May, 1897, the controller placed the following certificate on the contract: "I hereby certify that the item of appropriation on which the within contract is founded is contained in sixth section of ordinance 317, File of Select Council, 1890, where the total amount of the assessments is appropriated to pay for within contracted work.

"The total assessments amount to $47,709.97. The estimated amount of expenditure under this contract is $47,709.97, and said amount of estimated expenditure has been charged against said item of appropriation."

By no process of reasoning, however ingenious, can the conclusion be avoided, that the contract in question was one

"involving an appropriation of money." Not only was an appropriation of $1,500 made for the paving of those parts of the street in front of city property, but the city's share ($1,250.40) of the entire cost of the pavement contracted for was actually paid to the contractor out of the general funds of the city thus specifically appropriated for the purpose. This payment, as between the city and the contractor, was not gratuitous, but if the statutory conditions precedent to the formation of a valid contract had been complied with would have been legally enforceable. The city obligated itself to pay the contractor "out of the assessments made and levied for the purpose;" by the paving ordinance, the several amounts of these assessments were to be ascertained by apportioning the entire cost of the improvement "among all the properties fronting on both sides of the street" according to frontage; and by the same ordinance the city guaranteed the payment of "assessments upon nonassessable property." In determining what assessments the city pledged for the payment of the cost of the improvement we must look to the ordinance which, intentionally, and for a manifest purpose, made no discrimination based on the ownership of the properties fronting on the street. Hence, whether or not as an abstract proposition city property is liable to assessment and lien for a local improvement is immaterial. The scheme under which the pavement was laid contemplated that a due proportion of its cost should be charged against such property fronting on the street, and the city contracted to pay it. The question is, not whether a lien could have been filed, but whether the city had power to contract, and did contract, to pay that proportion of the entire cost which would have been assessable against its property if such property had been owned by private individuals. This question must be answered in the affirmative; and, as its contract obligation could not be discharged without an appropriation of a part of its general revenues, it is clear that the contract necessarily involved an appropriation of money within the meaning of the section. This had been duly made, as we have seen, and under a proper construction of the statute the estimated amount of expenditure by the city for paving in front of its property should have been charged against that item of appropriation, and so certified by the controller on the con-

tract. No attempt was made to comply with this condition precedent, until after the work was done, and without a proper certificate there was "no efficacious force in the attempted contract as to any one: " Erie v. Moody, 176 Pa. 478.

It is no answer to say that it does not appear on the face of the contract that it was founded wholly or in part on an appropriation of money; for, as the defendant's counsel well says, that very omission is guarded against by the statute. "Every contract involving an appropriation of money shall designate the item of appropriation on which it is founded." If it was neither designated in the contract nor in the controller's certificate, an additional reason is furnished for holding that the contract did not take effect as to the expenditure contemplated under the appropriation.

Coming now to the certificate of May, 1897, the learned judge was clearly right in holding that it was ineffectual to validate the contract in the particular under consideration ; for the reason that it makes no allusion direct or indirect to the $1,500 appropriation. As the counsel for the city argue, with great force and clearness, one of the evils of municipal government in the past, was the practice of entering into contracts involving large expenditure of the city revenue, without a prior estimate of the cost, or a prior setting aside of the amount necessary to meet such cost, with the result that, after the expenditure was authorized by the execution of a contract and the contract was fulfilled, the municipality was left in financial straits because the cost of the work contracted for had not been counted before it was completed. This, undoubtedly, was one of the mischiefs to be remedied by the law which requires the controller to certify contracts for the payment of which sufficient appropriations have been made, and forbids him, upon the penalty of making himself and his sureties personally liable for the excess, to certify a contract which will involve an expenditure in excess of the appropriation upon which it is founded. And, in order to prevent the controller from evading his plain duty by a merely formal certificate, he is required to certify upon the contract the essential facts, namely, the estimated amount of the expenditure thereunder chargeable against the item of appropriation on which it is founded. He does not make or supervise the estimate but he is required

to certify upon it the estimate made by the proper department according to the fact: Black v. Chester, 175 Pa. 101. A controller who complies strictly with the law cannot well go astray and certify a contract that is not entitled to be certified without putting on record the facts that will convict him of dereliction in the performance of his sworn duty. Construing the section with reference to the mischief to be prevented, of what efficacy is a certificate such as that under consideration ? Clearly none, so far as the liability of the city for paving in front of its property was concerned; for, it might well be that the assessments referred to, including those upon city property, would be equal in amount to the entire cost of the pavement, and yet the "appropriation of money" for the payment of the city's share of the cost be entirely inadequate for the purpose. The result in such a case would be that the contract would involve an expenditure of money out of its general revenues in excess of the appropriation upon which it was founded— the very thing the legislature intended to prevent.

Conceding then that the contract never took effect as to the expenditure thereunder which was chargeable to the appropriation of $1,500, the next question is, whether it might not take effect as to that portion of the expenditure which in no way involved or was founded upon the appropriation referred to ? In other words, if the consideration of a municipal contract is divisible ; the cost of one part of the work being chargeable to one item of appropriation, and the cost of the other part being chargeable to another item, and the work has been performed in accordance with the terms of the contract, and has been accepted by the city, will the controller's failure to charge the estimated expenditure for the former part of the work, to the proper appropriation, and to certify the fact upon the contract, prevent it from taking effect in any particular, although as to the other part of the expenditure thereunder the controller did his duty? We state the question broadly, leaving for separate consideration the effect of placing the certificate on the contract after the work has been done.

It is urged that the decision in Erie v. Moody, supra, conclusively answers this question in the affirmative, but we do not so understand that case. The decision was predicated on an ordinance that provided "that the sum of forty-one thou

sand five hundred dollars be and the same is hereby appropriated to defray the cost of said improvement." This was the only appropriation, as far as the evidence or the opinion of the court showed, involved in the contract. It was the plain duty of the controller to charge the estimated expenditure under the contract against this appropriation, and his certificate failed to show that he had done so. This was so clear that counsel were compelled to concede that the controller had not complied with the law, but argued, that, as the contractor had performed his part of the contract, and the pavement had been accepted by the city, a property owner could not set up the controller's omission as a defense to the assessment charged against his property. The opinion of the Supreme Court was addressed exclusively to a consideration of this question, and having shown that the position taken by counsel was not tenable, nothing remained but to affirm the judgment for the defendant. The question we have stated was not raised, apparently, nor could it have been upon the facts in evidence in that case. The court was there dealing with a case in which, apparently, there was but one appropriation, against which the entire amount of expenditure for the pavement was to be charged; and we remark, parenthetically, there is nothing in the opinion to indicate, that, in estimating the expenditure, the portion to be met by assessments upon private property was not to be taken into account. This will be important in considering another feature of the case, but for the present it is sufficient to point out, that the question of the applicability of the section to a divisible contract founded on two appropriations was not raised or decided.

It is to be borne in mind that the present case is not an attempt to recover for part performance of an entire contract. No such question arises in the case, and the decisions upon that branch of the law need not be considered. There has been full performance, by the contractor, in accordance with the terms of the contract. It is to be observed further, that the thing to be done under the contract was not contrary to law, morals, or public policy; therefore no rule for the construction of the statutes based on either of these considerations requires us to hold, that the contract, as a whole, was illegal and void. Nothing short of a clear and unequivocal expression of legisla-

tive intent would justify so harsh a construction, where the consideration of the contract is divisible and the part involving, or founded on, an appropriation of money, is readily apportionable, and may be severed from the part that is not founded on, or does not involve the appropriation in any way. The same would be true, where one part of a contemplated expenditure is founded on one item of appropriation, and the other part on another item, as if, for example, there had been an appropriation for the cost of the pavement proper, and another appropriation for the cost of the curbing. Would the controller's failure to indorse the proper certificate as to the estimated expenditure for curbing, enable the city to repudiate the contract in toto, and after full performance by the contractor, treat him as a mere volunteer, although, as to the estimated expenditure for paving, the certificate was in due form ? To state the question as applied to such a state of facts is to answer it; but the supposed case only illustrates a general principle which we think is applicable here, and has been thus stated : " When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the courts will make the distinction, for the common law doth divide according to common reason, and, having made that void that is against law, lets the rest stand: " Hob. Rep. 14; 2 Kent's Com. 467. How far this statement of a general principle, founded on reason and abundant authority, ought to be modified in the case of a contract involving an illegal or an immoral transaction, need not now be considered. Nothing of that kind is in this case. It is analogous to cases arising under the statute of frauds, where the doctrine is generally held, that, if the contract be such in its nature that it may be divided, and the part not required to be in writing by the statute, may be enforced without injustice to the promisor, that portion of the agreement will be binding : Wood v. Benson, 2 Crompt. & Jerv. 94 ; 2 Tyrw. 93 ; 1 Pars. on Con. 455, and cases there cited. Hence, if the case rested solely on the failure of the controller to certify the estimated expenditure chargeable to the appropriation for paving in front of city property, we should hesitate to conclude, that that alone would render the contract void and of no effect as to that part of the engagement or undertaking that was not " founded " upon, and that did not " involve " that item of appropriation.

But, it is said the estimated cost of paving in front of private property ought to have been charged against the appropriation made for that purpose, and, as the controller's certificate that he had so charged it, and designating the item of appropriation, was not placed on the contract until after the work was completed, the contract never took effect as to any one or for any purpose. This raises two questions: First, whether the contract as to the particular part of the work under consideration "involved" or was "founded" on an "appropriation of money" within the meaning of sec. 5, art. 9, of the Act of May 23, 1889, P. L. 277, 303; second, whether the controller could effectively place the certificate on the contract after the work was completed and accepted by the city.

Construing the ordinance and the contract together, three things seem to have been contemplated; first, an engagement by the city to pay for the cost of the improvement out of a fund to be raised by the city, by assessments upon abutting properties according to the frontage rule; second, an exemption from liability beyond the amount of such assessments and the cost of paving and curbing in front of city or other non-assessable property; third, an appropriation of the fund of money that would thus be raised by local and special taxation, to the payment of the cost of the improvement not provided for by the $1,500 appropriation heretofore referred to. The scheme did not contemplate a discharge of the city from liability by merely assigning to the contractors the claims against abutters. In other words, the contractors were not bound to take the claims in full payment of the contract price of the work, and collect them at their own risk and expense. The city became their debtor, and subject to a liability coextensive with the amount that it should actually collect from the assessments. It must be conceded that some of the arguments in favor of requiring strict compliance with the provisions of sec. 5, art. 9 of the act of 1889, where the cost of the improvement is to be paid out of city funds derived from general taxation, do not apply, with the same force, to a case where it is to be paid out of a fund to be raised by taxation of property specially benefited, and the city is not to be liable beyond that amount. Nevertheless, we question whether it would not be doing violence to the language in which the will of the legislature

has been expressed, to say that this fund, as it accumulates in the hands of the city treasurer, is not city money; that a prior appropriation of it to pay the cost of the improvement contracted for is not an appropriation of money within the meaning of the act; that no estimate of the probable cost of the improvement need be made or charged against such an appropriation; and, therefore, that the controller has no duty to perform with regard to such a contract. Notwithstanding the able opinion of the learned judge of the common pleas in support of this construction, we deem it advisable to consider the case upon the assumption that the statutory provision applied. We pass then to the second question.

It was held in Erie v. Moody, that the omission of the controller to charge the estimated expenditure against the proper item of appropriation, and to certify the fact on the contract, made the case analogous to Reilly v. Philadelphia, 60 Pa. 467, where the work was let to a contractor, not selected by a majority of the lot owners, although the resolution under which the paving was done provided that the contractor employed to do the work should be selected by them. WILLIAMS, J., delivering the opinion of the court in the last cited case said: "His selection by a majority of the lot owners, and his employment by the department of highways were essential requisites in order to give him authority to do the work, and the right to collect the cost thereof from the owners of property in front of whose premises it was done. If he was not selected by the lot owners, and if he did not contract with the department of highways, to do the paving, he was a mere volunteer, and is not entitled to recover from the city or the lot holders the cost of the paving." This decision was followed in City v. Stewart, 1 W. N. 242, and Phila. v. R. R. Co., 88 Pa. 314, but in December, 1878, an ordinance was adopted, ratifying and approving all such contracts "under which work had been done," and in City v. Hays, 93 Pa. 72, the question as to the effect of this ratification arose upon demurrer to the plaintiff's replication. It was argued there, as it is here, that it could not, as against a lot owner, validate the contract, and make that a good lien which was none before, but it was held by the Supreme Court that the claimant was entitled to judgment. Mr. Justice GORDON, who delivered the opinion of the court

said: " The case of Phila. v. R. R., 88 Pa. 314, did not turn upon any want of power in the city to make the contract as it was made, but on the fact that its agent, the highway department, had exceeded its authority in making the contract with O'Rourke, notwithstanding the fact that a majority of the property owners had refused to indicate him as their choice, therefore the contract could not . be enforced against the lot holders, for the reason that it was not binding on the city. It was on this ground alone, and not because of any equity in themselves that they were enabled to resist payment. But under the powers vested in the city councils, already referred to, there is no doubt that they could have approved and accepted the work and so have bound the city. Now, whether it was proper to do so or not, was a question for them and not the property owner. His right was to have a good pavement in front of his premises, and personally he had no other right. When, therefore, by the ordinance of December 3d, 1878, the councils ratified the contract with O'Rourke, the city became bound, and the defense by the property owners, on that ground, was, of course, no longer available."

Whether we pursue, to its legitimate conclusion, the analogy suggested in Erie v. Moody, or investigate the question upon original grounds, it seems to us, that a result may be reached, which will involve neither a disregard of the provisions of the act of 1889, nor a forced repudiation by the city of a contract carried out in good faith by the contractor, and conferring benefits of which the city and the abutting lot owners are in the full enjoyment. There was no want of power in the city to make the improvement and to assess the cost upon the abutting properties; no irregularity in the passage of the ordinance or in the selection of the person to do the work; and no defect of form or substance in the execution of the contract. We remark, in passing, that the defendant was one of the petitioners for the improvement to be made in the mode and at the price contracted for, and has paid four assessments without objection. Conceding that he is not estopped by these acts to say, that the contract never went into effect, it is plain, that he has no special equity which would entitle him to allege that as a defense, if the city could not. But, to proceed with the discussion of the general question as to the

validity of the contract as between the parties to it, there was a sufficient appropriation to meet the proposed expenditure and no act necessary to give the contract full effect remained unperformed except the bare indorsement of the controller's certificate. Whatever may be the nature of his duties in other particulars, his duty in this regard is purely ministerial (Com. v. George, 148 Pa. 463; Black v. Chester, 175 Pa. 101); and while performance of this statutory duty cannot be waived by the city officers, yet if after the certificate has been placed on the contract—it being entitled to certification at the time of its execution—the city ratifies it, we think, upon the just principle of City v. Hays, it would be bound. See also Steckert v. East Saginaw, 22 Mich. 104; Logansport v. Crockett, 64 Ind. 319; 1 Dill. Munic. Corp. sec. 291, and cases there cited. And if, as between the city and the contractor, the former could not deny liability upon the ground that the latter was a mere volunteer, neither can the property owner. His rights rise no higher than the city's. That the city has ratified the contract is evident from the fact that it is now here endeavoring to enforce this claim in order that it may fulfil its just obligations under it. See Shiloh Street, 165 Pa. 386; Amberson Ave., 179 Pa. 634; Silsby Mfg. Co. v. Allentown, 153 Pa. 319.

We conclude, therefore, that the act of the controller in certifying the contract after the completion of the work, where he had full authority to certify it before the work began, was, under the circumstances of this case, effective to give it validity as against the defendant.

As to the defendant's objection to the entry of judgment based on the fact that the ordinance directs the city engineer to assess the cost of paving, without directing him to report his schedule to the councils for approval, we adopt the opinion of the learned judge of the common pleas in the case of Harrisburg v. Trego, 7 Pa. Superior Ct. 511.

The order of the court below directing judgment for the defendant, and striking off the lien, is reversed; the lien is reinstated, and judgment is now entered in favor of the plaintiff, for the sum of $92.67.