The City of Harrisburg *v.* J. G. Trego and Thomas Mayer, terre-tenants, Appellants.

Argued March 10, 1898.   Appeal, No. 26, March T., 1898, by defendants, from judgment of C. P. Dauphin Co., March T., 1897, No. 224, on verdict for plaintiff.   Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Sci. fa. sur municipal lien.   Before McPHERSON, J.

The facts sufficiently appear in the opinion of the court below.

The court below directed judgment to be entered in favor of the plaintiff against defendants for $71.14 in the following opinion by McPHERSON, J.:

There is no dispute concerning the facts that give rise to this controversy.   It grows out of the paving of Fourth and Sixth streets in the city of Harrisburg; and the parties agree that, except upon two points to be considered, the necessary steps were taken to make the cost of the work a proper charge upon the defendants' lot.

The contract to pave was signed in 1890 and the work was finished about two years later, but only in May of 1897 was a certificate of the city controller indorsed upon the contract, purporting to designate the item of appropriation on which it was founded and to charge against such item the estimated amount of expenditure thereunder.   The defendants contend that the contract was void from the beginning because it lacked the certificate, and rely upon Erie v. Moody, 176 Pa. 478, as a decisive authority.   That case certainly rules this dispute, if the contract now in question involves an appropriation of money; but it is to be observed that the prohibition of art. IX., sec. 5, of the cities' Act of 1889, P. L. 277, 303, considered in Erie v. Moody, is laid upon such contracts only as involve an appropriation of the city's money.   Other municipal contracts do not need the controller's certificate before taking effect The report of the case cited is not as full as might be desired,

but from the appellant's paper-book (which is now before us), containing the notes of the trial, it appears that the contract decided by the Supreme Court to be invalid was a contract distinctly involving an appropriation of money. The sixth section of the ordinance authorizing the work was in these words: " That the sum of $41,000 be and is hereby appropriated to defray the cost of said improvement; " and section 2 provided that the city should pay the cost of paving street intersections, crossings of public alleys, and in front of church property other than that held for parsonages. How much of the sum appropriated by section 6 was needed to pay the cost of paving the intersections, crossings of public alleys, and in front of church property, does not appear with certainty; but from the certificate made by the controller, it may be safely assumed that the cost of doing this part of the work was expected to be $4,760. The contract followed the ordinance and bound the city as follows: " The cost of paving street intersections, public alleys and so much of the roadway as the respective churches or school houses would pay for if liable for assessment, shall be paid by the city of Erie out of the fund appropriated for paving streets as soon as the city engineer certifies that said pavement has been completed according to contract." This cost, therefore, had been appropriated by the ordinance out of a fund belonging to the city; the contract was based on the appropriation, and therefore by the express terms of the act the certificate of the controller was necessary before the contract could take effect.

In the case before us, however, there is no appropriation of any money belonging to the city by the ordinance in question, and no appropriation is involved in the contract. The ordinance provides in section 3, that the city of Harrisburg shall under no circumstances be held liable for the payment of any part of the cost of said improvement, except as to assessments upon nonassessable property—these assessments being guaranteed by the city, and except also as to amounts actually received from property owners by the city treasurer for the benefit of the contractor. How much property, if any, along the line of Fourth and Sixth streets is nonassessable we do not know; no evidence was offered on that subject. But, even if the city may be liable to the contractor in respect of some property

along the line, this liability cannot be discharged under the ordinance now being considered; for in no section can there be found an appropriation of any amount whatever belonging to the city for the payment of any part of this paving. The ordinance contemplates that the city treasurer shall be the custodian of such sums assessed against the abutting property owners as may be paid into the treasury, and shall hand them to the contractor in payment for the work; and, perhaps with a misunderstanding concerning the effect of the city treasurer's receipts of the assessment—goes on to declare that " the total amounts of said assessments, or so much thereof as may be necessary, is hereby appropriated to the payment of the contract price of the work and the other necessary expenses." This declaration is probably unnecessary; but in any event it is not the " appropriation of money " meant by art. IX. of the act of 1889. There, the phrase means money belonging to the city, not money merely in its custody; and in this sense, not one dollar of money is " appropriated " by the ordinance under consideration. It differs essentially therefore from the ordinance before the court in Erie v. Moody, and for this reason we think the decision in that case does not now apply. If this view is correct, it is unnecessary to consider the further question, whether the certificate placed upon the contract by the controller a few days before the trial was made in time to support a recovery.

The defendants' second objection to the entry of judgment rests upon the fact that the ordinance directs the city engineer to assess the cost of paving, without directing him to report his schedule to the councils for their approval. It is argued that the act of 1889 nowhere authorizes councils to delegate the power to assess to the city engineer; but this is by no means clear. Art. V., sec. 3, of the statute provides that " Every city of the third class in its corporate capacity is authorized and empowered to enact ordinances for the following purposes . . . . ; " among them being the purpose named in clause X., namely, " To cause to be graded, paved or macadamized any public street . . . . and to provide for the payment of the cost and expense of the same . . . . by owners of real estate bounding and abutting thereon by an equal assessment on said property . . . ." No section has been pointed out re-

quiring councils either to make the assessment themselves or
to pass upon after it has been made by others; and the lan-
guage just quoted, which authorizes the city to enact an ordi-
nance for the assessment, may be construed to give to councils
a general supervision and control over the subject.   Under
this authority, it is possible that councils may be able in any
case to delegate to the city engineer the power given to him
by the ordinance now being considered.   And it may be more
easy to reach this conclusion if art. XV., sec. 31, is read in the
same connection; for this section seems to recognize the au-
thority of councils to delegate the power of making assessments
to other persons—the provision being, that whenever the cost
of local improvements is to be borne by the properties abutting
or benefited, five days' notice of the time and place of making
the assessment shall be given by " the person or persons au-
thorized by councils to make said assessment."   This appears
to be a recognition that councils may delegate the right of
making assessments to other persons, and we find nowhere any
requirement that the details of the calculation must be reported
and confirmed.   But it is not important now to determine pre-
cisely what power the act has given or withheld.   Conceding
that in some cases it might be necessary that councils should
confirm the schedules, it is enough to say that the assessment
under consideration is not of this class.   An examination of
the ordinance will show that the city engineer was to do little
else than make a simple mathematical calculation.   The amount
to be assessed, the property to be burdened, and the manner of
ascertaining the proportion each foot should bear, were dis-
tinctly specified in section 5; so that the engineer had no dis-
cretion whatever, and the assessment became a mere matter of
arithmetic.   Confirming an assessment of this kind would be
no more than a declaration that the engineer's division and addi-
tion were accurate; and this we think would have been super-
fluous.   If the calculation is wrong the error could have been
pointed out and corrected on the trial; but to say that a merely
ministerial act, with which the principal finds no fault and in
which no fault is alleged, must be declared invalid merely
because the city did not affirmatively approve it, seems to us
to be a purely technical argument, without support in the
equity or substantial merit of the defendants' case.

No other objection being urged to the claim of the city, we direct judgment to be entered upon the verdict in favor of the plaintiff for $71.14.

Exception to defendants.

Verdict and judgment for plaintiff. Defendants appealed.

*Error assigned* was in directing judgment to be entered for the plaintiff on the verdict. .

*William H. Middleton*, for appellants.

*C. H. Bergner*, with him *D. S. Seitz*, city solicitor, for appellee.

OPINION BY RICE, P. J., July 29, 1898:

The judgment is affirmed for the reasons given in Harrisburg v. Shepler, No. 47, March term, 1898, ante, p. 491.