# Sandy Lake Borough v. Sandy Lake and Stoneboro Gas Company.

*Courts—Judicial notice—Municipal corporations.*

It is proper for a court to take judicial notice of the existence of the municipal and quasi-municipal corporations into which the county within its jurisdiction is, for purposes of local government, subdivided.

*Boroughs—Lighting streets—Conditions.*

In Pennsylvania a borough has power to lay gas pipes under its streets for the purpose of supplying gas for lighting the streets and for the use of citizens, and it is competent for it to exercise that power in favor of private citizens, by granting a license to do the same thing. If the borough grants such a license and imposes conditions upon the right to exercise the same, an acceptance of the grant by the licensees constitutes a contract that while they operate under the license the conditions will be observed, and the duties performed.

Where such licensees enter under the grant and continue to enjoy the fruits thereof, they cannot set up as a defense against the performance of the conditions, that the contract was ultra vires. The law never sustains the defense of ultra vires out of regard for the defendant, but only when an imperative rule of public policy requires it.

*Boroughs—Granting license to light streets—Conditions—Assignments of license.*

Those who succeed to the rights of the original grantees of a license

from a borough to light streets, and continue to exercise such right, are bound to perform the conditions imposed by the original grant.

Where a resolution of a borough granting a right to three individuals to light streets is defective because not signed by the burgess, and the resolution provides that certain lighting shall be done free of cost to the borough, a corporation which has succeeded to the rights of the original licensees, and which has occupied the streets of a borough with its gas pipes, and has for a considerable period furnished gas free to the borough, cannot claim exemption from furnishing gas free to the borough because the resolution granting the license was not signed by the burgess.

*Boroughs—Contract—Ratification—Gas companies.*

Where a borough has authority to enter into a contract by which to license certain individuals to supply the citizens of the borough with gas on condition that gas shall be furnished to street lamps free, and the resolution authorizing such a contract is defective, because not signed by the burgess, the borough has power by a subsequent ratification to make valid the contract. It is not necessary that such ratification should be by a formal ordinance. The acceptance of the fruits of the contract and the formal assertion in a judicial proceeding of a claim founded upon it are sufficient.

Argued May 17, 1899. Appeal, No. 61, April T., 1900, by defendant, from decree of Mercer Co., Oct. T., 1898, No. 2, on bill in equity in case of Sandy Lake Borough v. The Sandy Lake and Stoneboro Gas Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity to require the defendants by a mandatory injunction to restore the gas pipes and connections of the defendant company with the street lamps of the plaintiff, so that the borough of Sandy Lake can turn on and use gas for street lighting purposes.

MILLER, P. J., found the facts as follows:

This is a bill in equity to require the Sandy Lake and Stoneboro Gas Company, defendant, to restore certain pipes and connections of defendant company's mains with the street lamps of the plaintiff borough in the same manner as said pipes and connections existed before they were cut by said defendant company, and so that the said borough can turn on and use gas for street lighting, as the same was used before the said pipes and connections were cut by the defendant. The case came on and testimony was taken on February 4, 1899, and subse-

quently argued by counsel of the respective parties, and it is now to be determined on both answer and proofs.

## FACTS.

The court finds the following facts:

1. That on or about November 3, 1894, T. S. Bailey, A. G. Hoovler and W. A. Egbert petitioned the burgess and town council of Sandy Lake borough to grant them permission to lay pipes through and along the streets and alleys of Sandy Lake borough for the purpose of supplying natural gas to the inhabitants of said borough.

[2. That at a regular meeting of the town council of said borough at which were present John E. Giebner, burgess, I. G. Harrison, chairman, S. F. Newkirk, J. C. Feathers, Geo. E. Patton and A. G. Hoovler, council, held at the regular place of meeting, on November 3, 1894, permission and authority were granted to said petitioners, Bailey, Hoovler and Egbert, and their assigns, to lay pipes through the streets of said borough, as prayed for, and was embodied in a resolution which was unanimously adopted, and of which the following is a copy:

"Resolved to grant Hoovler, Bailey and Egbert, their heirs and assigns, the privilege of laying pipe through, along or across such streets and alleys of Sandy Lake borough as they may desire to do for the purpose of supplying patrons with natural gas; also the privilege of repairing or making connections, provided they cover the pipe at all streets and crossings for the protection of their pipes and the traveling public; also that they hold themselves liable for any accident that may occur through their neglect, and furnish natural gas for twenty street lights free while gas is furnished patrons; said lights to be ordinary jets burned under glass and are to be turned out each morning, and such jets as are ordinarily used for street lights and not to be burned in the daytime; said lights are to be placed at such points in Sandy Lake borough as the burgess and council may designate and on such streets as pipe is laid. It is further provided that said Hoovler, Bailey and Egbert, their heirs and assigns, shall not charge consumers of gas in Sandy Lake borough a price in excess of $3.00 net per month for what are known as $\frac{4}{32}$ mixers, and $2.50 per month for what are known as $\frac{3}{32}$ mixers. Also that Hoovler, Bailey and Egbert are

to commence laying pipe for the purpose of supplying patrons with natural gas in Sandy Lake borough within three months and prosecute the same with due diligence, or this resolution is to be null and void and of no effect whatever."] [1]

3. That after the said resolution was adopted as aforesaid the said Hoovler, Bailey and Egbert accepted the terms of the same and at their request the time to begin and lay pipes in accordance with the terms of said resolution was extended from time to time, and they did begin, within the time limited by the last extension, to lay their gas pipes and mains in the streets and alleys of said borough, under the terms and authority of said resolution.

4. That prior to February 28, 1896, the said Hoovler, Bailey and Egbert had laid their gas mains along the principal streets of said borough and had connected at least six street lamps with their said gas mains, and were furnishing gas for said street lamps of said borough free of charge, under the terms of said resolution.

[5. That in February, 1896, the said A. G. Hoovler, T. S. Bailey and W. A. Egbert, having associated with them M. L. Kelly and I. M. Patterson, entered into articles of association to obtain a charter for their company under the name and style of the Sandy Lake and Stoneboro Gas Company, under and in pursuance of the act of assembly of May 29, 1885, providing for the incorporation of natural gas companies, and on February 28, 1896, applied to the governor of the commonwealth of Pennsylvania to grant them letters patent and incorporate them and their successors under the name and style aforesaid, which letters patent were granted March 2, 1896.] [2]

[6. That after letters patent had been granted incorporating the said parties and their successors as aforesaid, the corporation connected thirteen more street lamps in the said borough with its street mains and began to furnish gas to said borough for said street lamps free of charge, and continued to furnish gas to the street lamps that had been connected up prior to the date of said incorporation and those connected by it after that date, in all nineteen street lamps, down to the date of August 5, 1898, in accordance with the terms and conditions of said resolution of the town council of November 3, 1894, free of charge, excepting a specific bill of $10.00 presented by said corporation

to the town council during the year 1897, for gas burned in the street lamps in daytime, which bill the town council paid.] [3]

7. That the lamps, posts, pipes, stopcocks and saddles connecting the street lamps with the gas mains of the said corporation were paid for by and were the property of the borough of Sandy Lake.

[8. That the said borough of Sandy Lake has· never in any way rescinded or repudiated the resolution of the town council passed on November 3, 1894, under the authority of which the gas mains were laid in the streets of the said borough, and has always complied with the terms of the said resolution so far as the said borough was bound to observe and comply with the same, except the occasional burning of gas in the street lamps in daylight through inadvertence or oversight or by unwarranted interference of outsiders.] [4]

9. That on August 5, 1898, the said corporation by its officers and employees turned the gas off from the street lamps in said borough, and refused to furnish any more gas to the said borough under the terms of the said resolution; that the borough, acting through its proper officers, turned the gas on, and that thereupon the said corporation by its officers and employees, against the positive direction of the borough authorities, disconnected the pipes of the borough leading from the gas mains to the street lamps, and since then have refused to furnish gas under the terms of said resolution to the said borough for their street lamps.

10. That the defendant corporation is ready and willing and has offered to furnish gas to the borough on condition that the borough will pay for the gas consumed by said street lamps at the usual rates for gas furnished to their consumers, but refuses to furnish it free of cost.

11. That A. G. Hoovler, one of the persons named in the said resolution whereby permission was granted to Hoovler, Bailey and Egbert, and their assigns, to lay pipes through the streets of said borough, was, at the time of the passage of said resolution, a member of the council of said borough and was present at the meeting of said council and voted for said resolution.

12. The greater portion of the pipes and main line of the defendant corporation were laid by the said corporation after the date when the charter was granted.

[13. That the aforesaid resolution referred to in the second finding of fact was not signed by the burgess nor attested by the secretary, nor was any notice by advertisement either in a newspaper or by handbills given of the same, but the minutes of the council of November 3, 1894, shows that the said resolution was copied in full in the said minutes, and that the said minutes were signed by the secretary.] [5]

The court entered a decree in accordance with the prayer of the bill.

*Errors assigned* were (1–5) above findings of fact, quoting them; (11) in holding that plaintiffs were entitled to decree prayed for in the bill.

*W. H. Cochran*, for appellant.—Prior to the Act of May 29, 1885, P. L. 29, there was no power to bestow franchises for the furnishing of natural gas: Trickett on Borough Law, p. 191, sec. 154; Emerson v. Com., 108 Pa. 111; Sterling's Appeal, 111 Pa. 35.

The only power conferred upon boroughs under the act is that of granting certain rights and privileges therein specifically enumerated to natural gas corporations, " by ordinance duly passed and approved." See Act of May 29, 1885, P. L. 29, preamble and section 13. From this it will be observed that such powers can only be granted by ordinance and not by resolution.

Councils are authorized to give or withhold their assent, without more. They have no right to couple their assent with any condition or restriction not imposed by the act, unless the company agrees to accept the same and be bound thereby; and even then the conditions or restrictions so accepted by the company must harmonize and in nowise conflict with the provisions of the act: Appeal of City of Pittsburg, 115 Pa. 21.

*Q. A. Gordon* and *W. G. Barker*, with them *B. Magoffin*, for appellee.—The borough of Sandy Lake or its town council had the power on November 3, 1894, to grant authority to said Hoovler, Bailey and Egbert to lay pipes and mains through the streets of said borough for the purpose of furnishing natural gas to its inhabitants, subject to such reasonable terms and con-

ditions as the said council might see proper to impose: Wood
v. McGrath, 150 Pa. 451.

Conceding that the regular way for a municipality to enter
into contracts of a legislative character is by ordinance duly
passed, etc., yet it has been ruled time and again that if it has
the power to contract concerning the subject-matter, and ac-
tually does contract, that the contract is not void although it
has not been preceded by an ordinance: Borough of Millvale,
162 Pa. 374.

The defense of ultra vires cannot be set up by a party where
a contract has been executed and the party has enjoyed the
fruits thereof: Wright v. Antwerp Pipe Line Co., 101 Pa. 204;
Oil Creek, etc., R. R. Co. v. Pennsylvania Transportation Co.,
83 Pa. 160; Northampton County's App., 30 Pa. 305.

There is no merit in the objection of the appellant, that the
provision in the resolution that gas should be furnished for
twenty street lamps to the borough free of charge is an unrea-
sonable one. Municipalities have the right to require benefi-
ciaries of any franchises granted to comply with certain terms
and conditions. See Allegheny City v. The People's Natural
Gas & Pipeage Company, 172 Pa. 632, Sewickly Borough School
District v. The Ohio Valley Gas Co., 154 Pa. 539, and Cone-
maugh Gas Co. v. Jackson Farm Gas Co., 186 Pa. 443.

OPINION BY W. D. PORTER, J., February 14, 1901:

The defendant did not, by the pleadings, raise the question
of the regularity of the incorporation of the plaintiff borough,
and it was proper for the learned court below to take judicial
notice of the existence of the municipal and quasi-municipal
corporations into which the county within its jurisdiction was,
for purposes of local government, subdivided: Pearce v. Lang-
fit, 101 Pa. 507. The borough had power to lay gas pipes
under its streets for the purpose of supplying gas for lighting
the streets, and for the use of citizens, and it was competent
for it to exercise that power in favor of private citizens, by
granting a license to do the same thing: Wood v. McGrath,
150 Pa. 451. In case the borough granted such a license and
imposed conditions and duties upon the right to exercise the
same, an acceptance of the grant by the licensees constitutes a
contract that, while they operated under the license, the condi-

tions would be observed and the duties performed : Allegheny
v. People's Natural Gas and Pipeage Company, 172 Pa. 632.
Where such licensees enter under the grant and continue to en-
joy the fruits thereof, they cannot set up as a defense to the
performance of the conditions, that the contract was ultra vires.
The law never sustains the defense of ultra vires out of regard
for the defendant, but only when an imperative rule of public
policy requires it: Wright v. The Antwerp Pipe Line Com-
pany, 101 Pa. 204. " A man who has enjoyed a privilege has
no right to say that, because he ought not to have enjoyed it,
he will not pay for it :" Northampton County's Appeal, 30 Pa.
305. Those who succeed to the rights of the original grantees
of the license and continue to exercise such rights are equally
bound to perform the conditions : Northampton County's Ap-
peal, supra.

It may be conceded that the resolution of the borough coun-
cil granting to the original licensees the right to lay gas pipes
in the streets, was defective and not binding upon the borough,
for the reason that it was not approved by the burgess.    The
borough authorities, or any owner of property abutting upon
the street, might have caused the licensees to be restrained from
exercising the rights supposed to have been conferred by the
defective resolution.    The licensees were at liberty to decline
to proceed to the performance of any act, or the expenditure of
any money, upon the faith of the invalid resolution, but they
could not proceed to exercise all the rights which would have
been theirs had the resolution been valid, and, under a pre-
tended acceptance of the grant, subject to the conditions, take
possession of the borough streets, and, having complied with
all the conditions during the time they were piping the streets
and for a considerable period thereafter, decline to perform the
conditions, while still insisting upon enjoying the fruits of the
defective grant: Northampton County's Appeal, supra.    The
learned judge of the court below, upon sufficient evidence,
found the following facts : " That after the said resolution was
adopted, as aforesaid, the said Hoovler, Bailey and Egbert ac-
cepted the terms of the same, and at their request, the time to
begin laying pipes in accordance with the terms of said resolu-
tion was extended, from time to time, and they did begin,
within the time limited by the last extension, to lay their gas

pipes and mains in the streets and alleys of said borough, under the terms and authority of said resolution. That prior to February 28, 1896, they had laid their gas mains along the principal street of said borough, and had connected at least six street lamps with their said gas mains and were furnishing gas for said street lamps of said borough free of charge, under the terms of said resolution. That in February, 1896, the said Hoovler, Bailey and Egbert, having associated with them M. L. Kerr and I.' M. Patterson, entered into articles of association to obtain a charter for their company, under the name and style of the Sandy Lake & Stoneboro Gas Company, under and in pursuance of the act of assembly of May 29, 1885, providing for the incorporation of natural gas companies, and on February 28, 1896, applied to the governor of the commonwealth of Pennsylvania to grant them letters patent and incorporate them and their successors under the name and style aforesaid,' which letters patent were granted March 4, 1896. That after letters patent had been granted incorporating the said parties and their successors, as aforesaid, the corporation connected thirteen more street lamps in the said borough with its street mains, and began to furnish gas to said borough for said street lamps free of charge, and continued to furnish gas to the street lamps that had been connected up prior to the date of said incorporation, and those connected with it after their incorporation, in all nineteen street lamps, down to August 5, 1898, in accordance with the terms and conditions of said resolution of the town council of November 3, 1894, free of charge, excepting a specific bill of $10.00 presented by said corporation to the town council during the year 1897, for gas burned in the street lamps in daytime, which bill the town council paid." When the private citizens who had been the original licensees thus formed a corporation, that corporation merely succeeded to the rights and property of the licensees, and took the same burdened with all the conditions and duties to which they were subject. The defendant corporation recognized this fact and connected its gas lines with the street lamps, and for a considerable period furnished gas to the street lamps, in accordance with the terms of the defective resolution, under a pretended acceptance of which their predecessors under the license had obtained possession of the streets. Having thus obtained possession of the streets of

the borough under circumstances which plainly indicated to the parties and all the citizens of the borough that they recognized their obligation to maintain the street lamps, they now propose to retain possession of said streets without discharging the duties which they pretended to assume. They are at liberty to abandon the streets at any time, but while they insist upon enjoying the fruits of the defective ordinance, they cannot be permitted to set up their own wrong in order to retain the privilege, while refusing to perform the accompanying duty: Wright v. Pipe Line Company, supra.

Apart from these considerations, however, we must hold the defendant bound to perform the acts commanded by the decree of the learned court below, upon another ground: The borough clearly had authority to enter into the contract which is here sought to be enforced, and, having that authority, it had power by a subsequent ratification to make valid the contract based upon the defective resolution by which the license was originally granted: City of Phila. v. Hays, 93 Pa. 72; Silsby Mfg. Co. v. Allentown, 153 Pa. 319. It is not necessary that such ratification should be by a formal ordinance; the acceptance of the fruits of the contract, and the formal assertion in a judicial proceeding of a claim founded upon it are sufficient: Amberson Avenue, 179 Pa. 634; Shiloh Street, 165 Pa. 386. That the borough has ratified the contract is evident from the fact that it is now here endeavoring to enforce this claim: Harrisburg v. Shepler, 7 Pa. Superior Ct. 491.

The decree is affirmed, and the appeal dismissed at costs of the appellant, without prejudice to the right of the defendant to withdraw its pipe lines from the streets of the borough at any time.

WILLIAM W. PORTER, dissenting:

The plaintiff's bill is founded upon a piece of borough legislation, in form a resolution. The resolution grants to certain private persons the right to lay pipes upon the public streets to supply patrons with natural gas. The consideration for the right attempted to be conferred is the requirement that gas for twenty street lights, for public lighting, shall be furnished free, at designated points within the borough. Such legislation, if validly enacted and accepted, would create a contract between

the parties. But nothing short of legislation enacted in compliance with the requirements of the law would suffice, since the act attempted is legislative, not ministerial. While legislation by borough councils may be by ordinance or resolution, yet the requirements which are essential to the validity of an ordinance must be observed in the passage, approval, recording and publication of resolutions where the action of councils is legislative : Howard v. Borough of Olyphant, 181 Pa. 198. Herein the resolution before us fails, in that it was not advertised, nor was it signed by the burgess, as required by the act of 1851. See Commonwealth v. Diamond National Bank, 9 Pa. Superior Ct. 118. The borough now files a bill praying for a decree of specific performance. It asks that the defendants be compelled to furnish the free lights stipulated for in the resolution. If the resolution be regarded as covering only ministerial action by the borough, then no foundation can be found in it to sustain the bill, for no contract was thereby created. If it be held to be the basis of a contractual relation, whereby both the borough and the grantees of the right are bound to the performance of obligation, then was the action legislative and void, because not fulfilling the requirements of law in its enactment.

The record shows the passage of no legislation by the borough subsequent to the original resolution, ratifying the latter or accepting the benefits or assuming the obligations covered by it. The filing of the bill by the law officer of the municipality does not appear to have been directed by borough ordinance. Without the aid of such a direction, his act could not remedy the defects in the passage of the original resolution or give it the effect of a legally enacted ordinance. The acts of the parties do not help out the transaction by ratification. True, there was an entry upon the streets and the free lighting was for some time furnished and accepted. This was not such an adoption by the borough of the provisions of the resolution as converted the privilege in the hands of the original parties (and the defendant company, their successors) into a right to continue the exercise of the privilege.

There is nothing in the course taken to prevent the borough from requiring the defendants to vacate the streets at any time. To invoke the provisions of the resolution as an estoppel would

be useless. It would be answered that municipalities can incur liability only by proceeding in accordance with law; that those dealing with them are charged with the duty of seeing that the law is observed; and that the resolution was void. Here, if the borough is entitled to the relief prayed for, a contract must be shown. A contract involves reciprocal obligation. As the resolution fails to confer upon the defendants a right to use the streets, it also fails to confer upon the borough the right to insist upon the furnishing of free lights.

It is to be observed that the original resolution attempted to give to certain individuals the right to lay pipes upon the borough streets, and that the defendant company was, a considerable time thereafter, erected by the individuals named and certain other persons. The evidence is that the formation of the corporation was not in contemplation when the resolution was passed. The company, however, did succeed to the property, privileges and burdens of the original holders, whatever they were. The only authority of the company to be upon the streets is to be found in the defective resolution of November 3, 1894. This, therefore, is not the case of a corporation organized under the act of May 29, 1885, with right of eminent domain, procuring in first instance, the " assent" of the borough to the laying of pipes. It is not determined by cases decided under that act. The company is here only as successors to such right as the resolution of November 3, 1894, conferred.

My opinion is that no contractual relation is exhibited by the bill and proofs, upon which a decree for specific performance can be rested. Doubtless the borough has the right to protection against the use of her streets by the defendant company. A forum in which such protection may be had is not wanting. It is not, however, a court of chancery. I would reverse the decree and dismiss the bill.