## New Brighton Borough v. Pulaski Township School District.

*Evidence—Judicial notice — Public matters — Townships — Geographical facts.*

1. The courts of Pennsylvania will take judicial notice that a particular township is a township of the second class.

*Poor law—Boards of health—Townships of the second class—Contagious diseases — Acts of April 11, 1899, May 14, 1909, May 18, 1911, July 17, 1919, P. L. 1010, June 28, 1923, P. L. 888, and March 17, 1925, P. L. 34.*

2. The Act of April 11, 1899, P. L. 38, giving to school directors and townships certain duties to perform in regard to persons afflicted with contagious diseases, was repealed by the Act of May 14, 1909, P. L. 837.

3. In 1922, there was no act of assembly in force under which the school board of a township of the second class had any authority to act as a board of health, and no act empowering school districts of second class townships to authorize or pay any expenses in connection with the poor or in taking care of any person afflicted with contagious or infectious diseases.

4. In 1922, the State Board of Health, in connection with the county commissioners in the various counties, were required to take care of the indigent poor in second class townships where such poor were afflicted with infectious or communicable diseases.

5. The first section of the Act of May 14, 1909, P. L. 837, was repealed by the School Code of May 18, 1911, P. L. 309, in so far as such section provided for the recovery of expenses incurred by any other city, borough, township or district in the care and maintenance of indigent poor afflicted with communicable diseases and in resident second class townships.

6. Even if such section were in force, it would not be operative in a case where notice had not been given to any of the authorities mentioned in the act, but to the health officer of a second class township who had been appointed as such by the State Board of Health.

Petition to compel repayment of money expended on a poor person suffering from small-pox. Q. S. Beaver Co., Dec. Sess., 1925, No. 6½.

*Charles H. Stone*, for plaintiff; *A. G. Hebling*, for defendant.

McCONNEL, J., Nov. 29, 1926.—The plaintiff, the Borough of New Brighton, on Dec. 16, 1925, presented a petition to the Court of Quarter Sessions of Beaver County under the Act of Assembly approved May 1, 1909, P. L. 307, setting forth that the plaintiff is a municipal corporation of the Commonwealth of Pennsylvania; that the Borough of New Brighton has had a duly

appointed and constituted board of health; that on March 24, 1923, Mrs. Martha Tucker, a resident of Pulaski Township, Beaver County, Pennsylvania, was in the Beaver Valley General Hospital as a visitor, and being found to be suffering from small-pox, or varioloid, was, on March 24, 1922, removed by the Board of Health of the Borough of New Brighton, under the direction of the County Medical Director, to her home in Pulaski Township; that the Secretary of the New Brighton Board of Health notified J. Lewis, a justice of the peace of New Brighton Borough, who was then acting as health officer for Pulaski Township, of the proposed action of the New Brighton Board of Health, and that the said J. Lewis refused to have anything to do with the case; whereupon the Board of Health of New Brighton appealed to the County Medical Director, who instructed the New Brighton Board of Health to obtain a nurse for Mrs. Tucker, as she would be in her home alone after reaching there, and to remove her from the hospital to her home; that the said J. Lewis was again notified by the Secretary of the New Brighton Board of Health, at the moment the ambulance crossed the borough-line, that Mrs. Tucker was then in Pulaski Township, and was told by said officer that he would take care of things; in pursuance of which statement the home of Mrs. Martha Tucker, in Pulaski Township, was quarantined and a guard placed on her home by the authorities of Pulaski Township; that under the direction of the County Medical Director of Beaver County, Mrs. L. A. Knoch was employed as a nurse to care for the said patient, and payment for her services was guaranteed by the Board of Health of the Borough of New Brighton, and for her services in the care and nursing of said patient she was subsequently paid the sum of $300 by the Borough of New Brighton; that, in addition to said payment, there was paid by the Borough of New Brighton $29.98 for fumigating the Beaver Valley General Hospital, at New Brighton, $7.25 for labor and materials used in fumigating the ambulance which conveyed the said patient to Pulaski Township, making in all the sum of $337.23 paid by the Borough of New Brighton; that the said nurse was engaged the same day as the said patient was removed from said hospital and remained with said patient during the quarantine of her house; that the above-mentioned sums of money were certified to the Town Council of the Borough of New Brighton by the Secretary of said Board of Health of New Brighton as amounts necessarily expended as expenses in connection with said case; that a claim has been presented to the Supervisors of Pulaski Township, the Board of Health of Pulaski Township and the School District of Pulaski Township, and payment to the Borough of New Brighton of the said sums of money has been refused; that to the best of petitioner's knowledge, information and belief there does not exist at the present time in the said Township of Pulaski any board of health; that neither the Borough of New Brighton nor the Board of Health of New Brighton have been paid any sum whatsoever on account of the sums so expended. The Borough of New Brighton, therefore, prays that a rule be granted on the School District of Pulaski Township, or the school directors thereof, to show cause why the said sums of money so expended by the Borough of New Brighton should not be paid by said school district, and that an order of court be made ordering, directing and decreeing that the said school district shall pay to the Borough of New Brighton the said sums of money.

When this petition was presented to the court, a rule to show cause was awarded, and thereupon the attorney for the School District of Pulaski Township filed a demurrer to the petition, alleging that the Act of 1909, under which the petition had been presented, was repealed by the Act of Assembly

approved May 18, 1911, P. L. 309, known as the School Code; that under the said School Code the School District of Pulaski Township had no authority to levy taxes for the purpose of paying such expenses and could not expend the tax money of said township for said purpose; that the Act of Assembly of April 11, 1899, P. L. 38, which empowered the school directors of the several townships of the Commonwealth of Pennsylvania to exercise the authority and powers of a board of health in each township, had been repealed by the said Act of 1911; that there is no health authority, or duty, now resting upon the school districts of the fourth class of the Commonwealth of Pennsylvania, that authority and duty having been taken over and exercised by the Department of Health of the Commonwealth of Pennsylvania through its representatives in the several districts; that as Martha Tucker was under the direction of the County Medical Director, who was an officer of the Department of Health of the Commonwealth of Pennsylvania, he could not in any way bind the Township of Pulaski for the payment of these expenses; that there is no law in the Commonwealth of Pennsylvania which defines a school district, or the board of school directors of any school district, as a poor district, or as overseers of any poor district; that the only legally constituted authority for the care of the poor within the County of Beaver is the Beaver County Poor District, and if any claim should be made by reason of a claim for the poor, it should be made to the Beaver County Poor District and not to the defendant school district; that J. Lewis was the health officer of Pulaski Township as appointed by the Department of Health of the Commonwealth of Pennsylvania, and was in no way connected with the School District of Pulaski Township; that the claim for the nurse is not for services rendered to the patient while within the jurisdiction of the plaintiff, but appears to have been for services rendered subsequent to the time when J. Lewis, the health officer for the Department of Health, had stated that he would take care of the patient, and subsequent to the time that she was delivered into her own home; that the moneys, as set forth in said petition, appear to have been expended by the Board of Health of the Borough of New Brighton, and, if spent by said board of health, action should have been brought in the name of the Board of Health of the Borough of New Brighton and not by the municipality, which is the plaintiff herein.

Of course, under this demurrer, as filed by the School District of Pulaski Township, all of the statements of fact which are sufficiently pleaded in the petition would have to be taken as true, and the right of the plaintiff to recover would have to be determined by the facts so alleged in said petition. The petition does not set forth that the Township of Pulaski is a township of the second class in this Commonwealth. But, as we understand the law, we can take judicial notice of the fact that the Township of Pulaski, in the County of Beaver, is not a township of the first class, but a township of the second class. The general rule as to judicial notice has been recently set forth by the Supreme Court of this State in Com. v. Ball, 277 Pa. 301, as follows: "Judicial notice may be taken of the existence of public matters, such as general history known to the community at large or salient facts of local history known generally in the particular community. . . . In counties where the court is conversant of its general affairs, judicial notice may be taken of the existence of highways, bridges and public buildings, and also of the existence of abandoned highways."

In the case of Pearce v. Langfit, 101 Pa. 507, it was held that the court could take judicial notice of geographical facts, such as the distances between well-known cities in the United States, the ordinary speed of railroad trains

between such cities, and how much time would be required by railroad trains in passing from one of such cities to another. In the case of Sandy Lake Borough v. Gas Co., 16 Pa. Superior Ct. 234, it was held that a court could take judicial notice of the existence of municipal and quasi-municipal corporations into which the county within its jurisdiction is, for purposes of local government, sub-divided. We have no doubt, therefore, that the court can take judicial notice of the fact that the Township of Pulaski is a second class township in this county.

An examination of the statutes with regard to boards of health in second class townships, and the liability of school districts therein for the care of persons afflicted with communicable diseases, who are unable to take care of themselves, discloses the following facts:

The Act of Assembly approved April 11, 1899, P. L. 38, entitled "An act to empower the school directors of the several townships of the Commonwealth of Pennsylvania to exercise the powers of a board of health in each township; to make rules and regulations to prevent the spread of contagious or infectious diseases; to appoint and fix compensation of a sanitary agent, and requiring all practicing physicians to report to the secretary of the board of school directors in each township the names and residences of all persons coming under their professional care afflicted with such contagious or infectious diseases,"

gave the school directors in each township of the Commonwealth of Pennsylvania certain duties to perform with regard to the control of persons afflicted with contagious or infectious diseases, and provided for the appointment of a sanitary agent therein, and for his compensation out of the school funds of the respective districts. This act of assembly, however, was specifically repealed by the Act of Assembly approved May 14, 1909, P. L. 837, which act of assembly contains the following preamble:

"*Whereas*, There was approved the twenty-ninth day of May, one thousand nine hundred and seven, an act, entitled 'An act to enable the township commissioners of townships of the first class in this Commonwealth to establish boards of health, and providing for the payment of the expenses thereof by the townships; and

"*Whereas*, In only a very few townships of the second class are the school boards organized as boards of health, and there is no proper provision for the payment of expenses out of the school funds for regular sanitary control by such boards; and

"*Whereas*, Because of such facts, the State Department of Health has been obliged, for the protection of public health, to maintain State health officers in these townships of the second class; and

"*Whereas*, The State Department of Health is equipped with its organized force of State health officers to provide for the protection of the public health in such townships of the second class, under the powers given it by the act, entitled 'An act creating a Department of Health, and defining its powers and duties,' approved the twenty-seventh day of April, one thousand nine hundred and five,"

which explains the reason why the general assembly repealed the Act of 1899, to wit, that, under the Act of 1907, townships of the first class had been authorized by the legislature to establish boards of health; that only a very few of the townships of the second class had organized boards of health, and there was no proper provision for the payment of expenses out of school funds; that the State Department of Health has been obliged, for the protection of the public health, to maintain State health officers in townships of the

second class, and that the State Department of Health is authorized to provide for the protection of the public health in townships of the second class.

This Act of 1909 is also specifically repealed by the School Code of May 18, 1911, P. L. 309; so that in 1922, when this cause of action arose, there was no act of assembly under which the school board of a second class township had any authority to act as a board of health, and there was no act of assembly which has been called to our attention, or which we could find, empowering school districts of second class townships to authorize any expenses, or pay any expenses in connection with the poor, or in the taking care of any person afflicted with contagious or infectious diseases, unless said authority is conferred by the Act of Assembly of 1909, under which the petition is presented in this case.

An examination of the various acts of assembly with regard to the State Department of Health and the boards of health authorized to be formed in the boroughs and townships of this Commonwealth will show that it was evidently the intention of the State legislature that the State Board of Health, in co-operation with the county commissioners in the various counties of this Commonwealth (who have charge of the poor in said counties), should take care of the indigent poor in second class townships when they are afflicted with infectious or communicable diseases.

The Department of Health seems to have been created under the Act of Assembly approved April 27, 1905, P. L. 312, and the act of assembly (among others) under which communicable diseases were controlled at the time the cause of action in this case arose seems to be the Act of Assembly approved July 17, 1919, P. L. 1010, the 2nd section of which provides, *inter alia*, as follows:

"Section 2. Upon receipt by the health authorities of any township of the first class, borough, or city, or by the health officer of the State Department of Health, of a report of the existence of a case of anthrax, &c., . . . the said health authorities or the health officer of the State Department of Health, as the case may be, shall quarantine, or cause to be quarantined, the premises in which such disease exists, etc."

This act of assembly was specifically repealed by the Act of Assembly approved June 28, 1923, and this act, in section 2, contains the same words substantially as section 2 of the Act of 1919, hereinabove mentioned, so that, under the act of assembly in existence at the time the cause of action in this case arose and in existence at the present time, reference is made to health authorities in townships of the first class, boroughs and cities; and, so far as second class townships are concerned, the State Department of Health is to take charge of and look after cases of communicable diseases therein.

The Act of Assembly approved March 17, 1925, P. L. 34, authorizes the board of county commissioners to provide and appropriate such sum or sums as they may deem necessary for the protection of the health, cleanliness, convenience, comfort and safety of the people of the county; and that the said board of county commissioners, upon appropriating money for health work, shall co-operate with the State Department of Health and boroughs and first class townships within their respective counties in the promotion of health work. It will be noticed that under this act the money can be appropriated for the protection of the health of any people in the county, and that the commissioners are to co-operate with the State Department of Health and the departments of health in boroughs and first class townships; second class townships not being mentioned in this act, evidently because the State Department of Health was to look after second class townships and the county com-

missioners were to co-operate in this work with the State Department of Health, and evidently were to pay the costs incurred in this work in second class townships.

The Act of Assembly approved May 29, 1907, P. L. 302, provides for boards of health, etc., in first class townships, and for the payment of expenses thereof by the townships, but does not authorize boards of health in second class townships, nor provide for the expenses thereof. And this act was specifically repealed and supplied by the Act of Assembly approved June 12, 1913, P. L. 471, which provides for the establishment and maintenance of boards of health in boroughs and townships of the first class, and for the payment of the expenses of said boards of health, or of the commissioners of health, incurred in administering the health laws in any borough or township of the first class in this Commonwealth. There is no mention in this act of second class townships, nor any provision contained therein with regard to the care of indigent poor in second class townships, nor for the payment of expenses incurred in second class townships in caring for the indigent poor who may contract communicable diseases therein.

It seems clear, therefore, that in 1922 the State Department of Health, in co-operation with the commissioners of the various townships, was required to take care of the indigent poor who might contract communicable diseases in second class townships, and that either the State Department of Health or the county commissioners of the respective counties would have to take care of the expenses of the maintenance of indigent poor cases in second class townships.

The question then arises whether the Act of Assembly approved May 14, 1909, P. L. 307, is still in existence and that a proceeding may be had under that act to compel the school district of a second class township to pay the expenses of indigent poor who are residents of such townships and who require care and maintenance by reason of having contracted a communicable disease, it being contended on the part of the defendant that this act was repealed by reason of the School Code of 1911, and that there is no authority in the school board of a township of the second class to pay said expenses.

So far as the School Code is concerned, if the school directors in a second class township had the power, prior to said act, under any act of assembly to pay the expenses incurred in the care and maintenance of indigent poor persons who may be afflicted with communicable diseases and resident in such townships, they would still have that power and be subject to that duty, for the Act of 1909 is not specifically repealed by said act; and section 409 of the School Code provides as follows:

"Section 409. In every school district the board of school directors created under the provisions of this act shall succeed to, and shall have and possess, all the powers, rights and privileges, not inconsistent with this act, which the present existing board of school directors, board of school controllers, or board of public education, in its respective district, now lawfully has."

It also appears that by the Act of Assembly of July 12, 1923, P. L. 1074, section 4 of the Act of 1909 was amended so as more specifically to define what is meant by a settlement as defined in the Act of 1909. This is persuasive evidence that the State legislature had not intended to repeal the Act of 1909 prior to July 12, 1923, and that it had not been repealed by implication by any other act of assembly.

It will be noticed that the Act of Assembly of May 14, 1909, P. L. 307, in the 1st section, provided for a petition to the Court of Quarter Sessions under the circumstances detailed in the petition filed in this case; and under the

2nd section it is provided that all persons falling sick of any contagious or infectious disease, excepting those entitled to relief under the existing poor laws, shall bear and pay all expenses incident to such sickness, except expenses of quarantine; and also provided in said section for the recovery from such persons by the bureau of health, board of health, or board of school directors, of the expenses incurred by them in caring for such diseased persons; and in sections 3, 4 and 5 there are provisions defining a settlement in any district; so that, in our opinion, even if the 1st section of this act has been repealed by implication through the legislation we have hereinabove mentioned, it would not necessarily follow that the other sections of the act were repealed; and the fact that the Act of 1923 amended the original act with regard to settlement would not even be persuasive evidence that section 1 of the Act of 1909 had not been repealed and was still in existence.

In our opinion, therefore, the 1st section of the Act of 1909 has been repealed and made ineffectual, so far as it provides for the recovery of expenses incurred by any other city, borough, township or district in the care and maintenance of indigent poor afflicted with communicable diseases and resident in second class townships.

There is another reason, also, which prevents the recovery by the plaintiff in this case under the petition presented. The 1st section of the Act of 1909 . provides as follows:

"Section 1. Be it enacted, etc., That if any person shall come out of any city, borough, township or district in this Commonwealth into any other city, borough, township or district, and shall happen to fall sick of any contagious or infectious disease before he shall have gained a settlement therein, the bureau of health, board of health or board of school directors of such city, borough or township or district shall, as soon as conveniently may be, give notice to the bureau of health, board of health or board of school directors of the city, borough, township or district, as the case may be, where such sick person had last gained a settlement, or to one of them, the name, circumstances and condition of such sick person; and if the bureau of health, board of health or board of school directors to whom such notice shall be given shall neglect or refuse to repay the moneys necessarily expended for the use of such sick person and to take charge of relieving and maintaining him, or shall, on request made, refuse or neglect to pay the money expended in maintaining such sick person, in every such case it shall be the duty of the Court of Quarter Sessions of the county where such sick person was last settled, upon complaint to them made, to compel the payment by such bureau of health or board of school directors or board of health of all such sums of money as were necessarily expended for such purposes, in the manner directed by law in the case of a judgment obtained against overseers of poor: Provided, that in all cases the Court of Quarter Sessions of the proper county shall have the right and authority to supervise, correct and amend, or allow, the charges or expenses received, or any items thereof."

An examination of this section shows that the notice is to be given to the "bureau of health, board of health or board of school directors of the city, borough, township or district, as the case may be, where such sick person had last gained a settlement, or to one of them." "One of them," of course, means either the bureau of health or the board of health or the board of school directors; and the notice mentioned in the petition in this case is not given to the board of school directors of the Township of Pulaski; and it could not have been given to the board of health of Pulaski Township, because there was none such existing at that time in the township, and, as we have shown here-

New Brighton Borough *v.* Pulaski Township School District.

inabove, none could legally exist at that time in a second class township, and it is evident from the petition that the notice was given to the health officer of the township who had been appointed as such by the State Board of Health. This notice, in our opinion, is not a compliance with the Act of 1909, and, therefore, by reason of the fact that the notice provided for under the Act of 1909 was not given to the School Board of Pulaski Township, the plaintiff would have no right to recover under this act. It is an act of assembly allowing, under specific circumstances, a recovery against a school district of the expenses mentioned in the petition, and, of course, would have to be strictly complied with by the claimant before it would be entitled to recover against the School District of Pulaski Township.

For the reasons hereinabove set forth, the demurrer filed by the School District of the Township of Pulaski in the above stated case is sustained and the petition dismissed, at the costs of the petitioner.

### Order.

Now, Nov. 29, 1926, the demurrer filed by the School District of the Township of Pulaski in this case is sustained and the petition dismised, at the costs of the petitioner, the Borough of New Brighton.