Amberson Avenue.  Appeal of A. H. Childs, Mrs. Oliver McClintock, Walter C. Childs and James McKay.

*Road law—Paving sidewalk—Acts of May* 16, 1891, *April* 18, 1857 *and April* 1, 1868.

Under the remedial Act of May 16, 1891, P. L. 71, assessments may be made for paving a sidewalk, although the property owner has been given no notice to do the work as provided by the Acts of April 18, 1857, P. L. 240, and April 1, 1868, sec. 17, P. L. 569.

*Road law—Irregularity in contract—Waiver.*

Where an irregular municipal contract is one which the city could have authorized, the city may waive the irregularity.

*Road law—Regrading—Cost.*

Where a regrading of a street is necessary to prepare the surface for a pavement duly authorized by the municipality, and no part of the cost of regrading is included in the benefits assessed, the property owners have no standing in a proceeding to assess benefits to object to the regrading.

*Road law—Pavement—Cost—Evidence.*

Testimony as to the cost of the work must be directed to show the price at which it could have been done at the time the pavement was laid, and not the price charged at different times in other cities.

*Road law—Conclusiveness of viewers' findings of fact.*

The finding of road viewers on questions of fact, approved by the court below after a thorough examination, will not be disturbed by the Supreme Court, except for clear error.

Argued Nov. 10, 1896. Appeal, No. 32, Oct. T., 1895, by A. H. Childs et al., from order of C. P. No. 3, Allegheny Co., Aug. T., 1891, dismissing exceptions to report of viewers. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of road viewers.

In addition to the facts set out in the opinion of the Supreme Court it may be stated, as appeared from the record, that in September 1889, a petition was presented to the councils of the city of Pittsburg by certain residents on Amberson avenue, for the paving and curbing of the avenue; and on the 13th of that month an ordinance was approved authorizing the improvements. The work was completed under the ordinance and accepted by the city Dec. 23, 1890. The proceedings were under the Act of May 16, 1889, P. L. 228, which act was declared unconstitutional in Pittsburgh's Petition, 138 Pa. 401. After the passage of the remedial Act of May 16, 1891, P. L. 80, the city of Pittsburg petitioned for the appointment of viewers to assess the costs, damages and expenses of the paving and curbing. Viewers were appointed, who assessed the property with the cost of the pavement, and exceptions to their report were dismissed. Subsequently, however, the report of the viewers was recommitted to them, and reassessment was made. Exceptions to the second report were dismissed. The property owners appealed.

*Errors assigned* were in dismissing exceptions to the report of viewers.

*M. A. Woodward*, for appellants.

*T. D. Carnahan*, with him *Clarence Burleigh*, for appellee.

OPINION BY MR. JUSTICE FELL, January 4, 1897:

The assignments of error may be considered under three heads—those which relate to the allowance against the property owners of the cost of paving the sidewalks, those which relate to the recovery from the city of the cost of grading, and those which raise questions of fact only as to the manner in which the work was done, the fair value thereof, and the equitable apportionment of the cost of improvement among the properties benefited.

The improvement of Amberson avenue was made under the act of May 16, 1889, which was decided in Pittsburgh's Petition, 138 Pa. 401, to be unconstitutional. The assessments were made under the remedial Act of May 16, 1891, P. L. 71. The precise question here raised as to the right of the city to recover for paving sidewalks, no notice having been given to the owner to pave, was considered in Bingaman v. Pittsburgh, 147 Pa. 353, and decided adversely to the appellant's contention. In that case a bill had been filed to restrain the city from proceeding to assess benefits for street improvements which included the laying of sidewalks. The right to include the sidewalks in the contract for curbing and paving was denied because under the acts of April 18, 1857 and April 1, 1868, the owners of abutting properties were entitled to notice before the letting of the contracts. It was held that as the property owners had enjoyed the benefit of improvements made under a void act, the legislature had the right to legalize what it might have previously ordered, and that the city could recover the cost of paving sidewalks. In this case the laying of the sidewalks was directed by the ordinance, and it was included in the proposal and the contract. The objection to the claim was one which the act of 1891 was intended to remove, and which this court decided was removed, and the question must be considered as definitively settled.

Amberson avenue had been graded some years before the improvement in question was made. Some additional grading was required to prepare the surface of the street for the pave-

ment, and some was directed to be done by the city's engineer in order to conform the grade of Amberson avenue to the grade of intersecting avenues which had already been paved. It was the duty of the contractors to do all grading required in the preparation of the surface, and it was written in the proposal " the price per square yard for paving includes 6303 cubic yards of excavation necessary to bring the avenue to proper sub grade." When at the hearing before the viewers it appeared that the avenue had been graded, and that this was a regrading not chargeable to the property owners, counsel for the city withdrew all claims for grading and excavation, and the viewers deducted from the price charged the estimated cost of grading, reducing the price of the pavement from $3.85 to $3.35 per square yard. No part of this cost was included in the assessments of benefits, and the property owners were assessed only for the cost of placing a pavement on a street already prepared for it. The city went to the extreme limit of fairness and liberality. The plaintiff being relieved of the charge has no standing in this proceeding to object that it was assumed by the city. Nor is the authority of the city to assume the debt the subject of doubt. In McCormick's Appeal, 165 Pa. 386, which arose from a proceeding to assess benefits under the act of 1891, the city engineer without authority of councils had made a change of grade during the progress of the work, which increased the cost thereof. It was held, following McKnight v. City, 91 Pa. 273, City v. Hayes, 93 Pa. 72, and Manufacturing Co. v. Allentown, 153 Pa. 319, that, as the contract was one which the city could have authorized, it could waive the irregularity, and that the acceptance of the work, the assertion of a claim founded upon it and the confirmation of the report of the viewers at the instance of the city were a ratification of the unauthorized act.

The remaining assignments relate to the character and price of the work and the apportionment of the benefits. They present questions of fact which have received the careful attention of the viewers and of the court. Much of the testimony was directed to show that the pavement was not of the best and most durable quality. In making the improvement it was the public need that was to be served, and the judgment of the property owners as to the kind of pavement they should have was subordinate to that of the city authorities, who were the

sole judges as to the kind of pavement best adapted to the avenue which the city could afford to put down. The property owners got a substantial pavement, if not one made in the best manner and of the most expensive materials. It was put down in 1889 and 1890, and in 1894 the viewers reported that although the pavement had been subjected to exceedingly heavy and continuous travel the surface was then smooth, solid, regular and durable, and that there were then no indications of weakness, insecurity or defective workmanship or material in the foundation. This report as to the actual condition of the street seems to be fully warranted, and we find nothing in the testimony which impeaches it. Two of the exceptants testified before the jury that the pavement was a good one of its kind, and had resisted an unusual amount of heavy hauling without showing any signs of weakness on the surface or in the foundation.

The testimony as to the value of the work was not directed to show the price at which it could have been done at the time the pavement was laid, but was expert testimony as to the price charged at different times in other cities. We find no testimony that the pavement could have been laid in Pittsburg in 1889, when the contract was made at a less cost than that which the city paid. At the time the contract was made the city did not pay promptly for work done or allow interest on deferred payments, and it appeared from the testimony that the contractors, because of the expected delay in payment, had charged forty-five cents more per square yard. This excess of charge was deducted by the court at the hearing of the exceptions, and the cost to the city of $3.85, which had been reduced by the viewers because of the charge for grading to $3.35, was further reduced by the court to $2.90 per square yard.

The finding of the viewers on questions of fact, approved by the court after a thorough examination, should not be disturbed except for clear error. We find nothing in the record of the case which would justify us in sustaining any of the assignments, and they are all dismissed, and the decree is affirmed at the cost of the appellant.