## Prouty v. Mehaffey

*E. M. Murphy*, for petitioner.

*J. B. Held* and *Samuel L. Gilson*, for respondent.

ROSSITER, P. J., December 1, 1933. — It appears from the pleadings that the salient facts, all of which are admitted, are as follows: Erie is a city of the third class; Thomas Mehaffey is the legally elected, duly qualified, and acting Director of the Department of Accounts and Finance; Harry A. Holmes is chief assessor and is under the charge or supervision of the Department of Accounts and Finance; Holmes employed W. L. Prouty to render expert appraisal services to the City of Erie without an enabling ordinance, written contract, or formal consent of the city council so to do; Mehaffey refused to approve the bills and execute a warrant for the payment of said services; and after such refusal the council of the City of Erie, by resolution, attempted to ratify the employment of Prouty by Holmes, but Mehaffey still refuses to honor or approve the bills for such services rendered. The sole question, then, for decision here is whether or not the city council can ratify an act unlawful originally; that is, may it now pay for the services rendered by plaintiff?

The contention of the plaintiff is that the resolution dated November 14, 1933, ratified and confirmed the unauthorized act of Mr. Holmes and made the employment legal ab initio; that since the services were rendered and acknowledged by the city, and no question is presented as to the reasonable necessity or the worth of the services, the employment was legal from the beginning and the plaintiff is entitled to the issuance of a warrant in payment of his services; and that, the city council having the right in the first instance to authorize the employment of the services of the plaintiff, and those services having been performed, it may and has now accepted the same and ratified them; citing in support of this contention 2 Dillon, Municipal Corporations (5th ed.), 1190, quoting a part of paragraph 797, as follows:

"Ratification of Unauthorized Contracts.—A municipal corporation *may ratify* the unauthorized acts and contracts of its agents or officers, which are *within the scope of the corporate powers, but not otherwise.* Ratification may frequently be inferred from acquiescence after knowledge of all the material facts, or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals."

The plaintiff also cites City of Philadelphia, to use, v. Hays, 93 Pa. 72, and quotes part of the syllabus which reads as follows:

"To a scire facias on a municipal claim, the defendant pleaded that the highway department had contracted with the claimant without complying with the

provisions of the ordinance under the provisions of which the contract was made. The claimant replied that under a subsequent ordinance all such contracts were ratified and approved. The defendant demurred on the ground that the contract having been invalid it could not be thus ratified as against defendant: *Held*, that judgment should have been entered for claimant on the demurrer.

"Although the agent of the city exceeded his authority, as the contract was one which the city might have authorized, it could waive the irregularity and adopt the contract after it was made."

He also cites and quotes from the opinion of Justice Gordon, commencing at the bottom of page 75, as follows:

"In principle this case is the same as McKnight *v.* City of Pittsburgh, 10 Norris [91 Pa.] 273. The defense to the lien in that case was, that the contract was invalid in that the city engineer, by whom the contract was executed on part of the city, had exceeded his authority in adopting a grade different from that prescribed by ordinance. But the power of the councils to ratify the contract, thus rendered void by the act of the agent making it, was by this court sustained, in the language following: 'Such being the case, the engineer exceeded his authority when he disregarded that grade and adopted a new one, and the city, at any time before the adoption, by it, of the work done by the contractor, might have repudiated the act of its engineer and avoided the contract. But it could not do this after such adoption; for, as in the case of a private person, it having the power to contract, the power to adopt a contract, made for its benefit, is necessarily involved in the original power. It is, indeed, but a question of power that we have to consider; that being determined all is determined. Hence, we repeat, the city having the undisputed power to establish grades, and to make contracts for paving, the correlative power of adopting grades and contracts made by its officers, for its own benefit, necessarily follows.'"

The plaintiff also cites Tarentum Borough v. Moorhead, 26 Pa. Superior Ct. 273, and quotes part of the syllabus which reads as follows:

". . . a municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, which are within the corporate powers, and that such action need not necessarily be by resolution or ordinance, but may be implied from the acceptance of the work and formal assertion in judicial proceedings of claims founded upon it."

He also quotes from the opinion of Rice, P. J., commencing at the bottom of page 280, as follows:

"No statute has been called to our attention which made it the duty of the borough officers to let the contract to the lowest responsible bidder, but the ordinance in question contains such provision. Therefore, while it cannot be said that they exceeded their statutory powers or violated any statutory provision, yet it cannot be denied that in entering into the second contract without attempting to get bids they failed to comply with the mandate of the ordinance."

However, this paragraph of the opinion also states:

". . . a municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, which are within the corporate powers, and that such ratification need not necessarily be by resolution or ordinance but may be implied from the acceptance of the work and formal assertion in judicial proceeding of a claim founded on it. Amongst these cases [i. e., those supporting the above proposition] may be cited McKnight v. Pittsburg, 91 Pa. 273; Phila. v. Hayes, 93 Pa. 72; Brientnall v. Philadelphia, 103 Pa. 156; Silsby Mfg. Co.

v. Allentown, 153 Pa. 319; Shiloh Street, McCormick's Appeal, 165 Pa. 386; Amberson Avenue, 179 Pa. 634; Harrisburg v. Shepler, 7 Pa. Superior Ct. 491; Erie v. Bier, 10 Pa. Superior Ct. 381."

It will be observed that stress is laid in all these quotations on the rule that acts and contracts of agents or officers which are within the corporate power may be ratified, and from this the plaintiff concludes that since council in the first instance had the power and authority to employ the petitioner by virtue of a resolution, it necessarily follows that inasmuch as the services have been rendered and acknowledged by the city council, it having later ratified the action of Holmes in the employment of the plaintiff, it is therefore the duty of the finance director to execute the necessary warrant for his payment. We would agree in this were it all the law on the subject, but the contention of the defendant is that he is dealing with proceedings of a municipal corporation, affecting public moneys, and therefore is restricted and controlled in his acts and discretion by the authority bestowed by the legislature and may act only within the field and along the lines thus confined and granted; that while a municipal corporation is liable for contracts entered into by unauthorized agents when such contracts are within the scope of its corporate power, if ratified by it, such ratification does not take place here and cannot exist here, as it is in defiance of express conditions imposed by law, as the Third Class City Law of June 23, 1931, P. L. 932, sec. 902, provides as follows:

"Council shall prescribe, by ordinance, the number, duties, and compensation of the officers and employes of the city. No payment of such compensation shall be made from the city treasury, or be in any way authorized, to any person except an officer or employe elected or appointed in pursuance of law. No ordinance shall be passed giving any extra compensation to any officer, servant, employe or contractor, without previous authority of law. Any officer drawing or countersigning any warrant, or passing any voucher for the same, or paying the same, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding five thousand dollars, and undergo imprisonment not exceeding one year";

that this expressly prohibits that compensation shall be made from the city treasury or be in anywise authorized to any person except an officer or employe elected or appointed in pursuance of law, and to the same effect is the preceding Act of June 27, 1913, P. L. 568, the Act of May 23, 1889, P. L. 277, and the Act of May 23, 1874, P. L. 230. It will be observed that the provision of all these acts of assembly is practically the same on this subject.

It is evident that the legislature intended to prohibit just what has been attempted to be done here, viz., the employment of high-salaried persons without election or appointment in pursuance of law. To hold otherwise would be to hold that these words mean nothing; that the legislature, although using them, could not have intended their import but had intended just the opposite, to wit, that any officer in the city could appoint anyone he wanted to for any salary he pleased and then just pay him by ratification, and instead of meaning that no payment of such compensation should be made from the city treasury or be in any way authorized, it means that payment of such compensation should be made from the city treasury when it is duly authorized by ratification or that it meant to say "unless ratified," instead of "no . . . compensation shall be made . . . or be in any way authorized"; in other words, that the act meant to open a door instead of ordering it closed and kept closed. Clearly, it would have been very easy for the legislature to have said that such employment

118

might be ratified had it intended that it should be. *Quando aliquid prohibetur, prohibetur omne per quod devenitur ad illud.*

Dillon, Municipal Corporations, in the same paragraph quoted by the plaintiff, supra, continuing, says:

"But a subsequent ratification cannot make valid an unlawful act without the scope of corporate authority. An absolute excess of authority by the officers of a corporation, in violation of law, cannot be upheld; and where the officers of such a body fail substantially to pursue the material requirements of a statutory enactment under which they are acting, the corporation is not bound. In such cases the statute must be strictly followed, and a person who deals with a municipal body is obliged to see that its charter has been fully complied with: when this is not done, no subsequent act of the corporation can make an *ultra vires* contract effective."

No case has been called to our attention which holds that an act directly prohibited may be indirectly enacted and disregarded, and in all the cases cited where ratification was upheld there was no statutory prohibition; hence it would seem to follow that, when there is a prohibition, ratification cannot circumvent it or act as a defiance of it, and if the provisions of a statute as plainly prohibitive as The Third Class City Law of 1931 is may be set aside by subsequent ratification it will open the door to endless evasions and render all limitations nugatory. *Si a jure discedas, vagus eris et erunt omnia omnibus incerta.*

Entertaining these views, it is unnecessary to take up the question whether or not the functions of the finance director are ministerial only, or whether or not the directors of other departments may interfere with his admitted functions.

The petition for writ of mandamus is therefore now, December 1, 1933, dismissed at the costs of the petitioner.          From Otto Herbst, Erie, Pa.